774 P.2d 228

**STATE of Arizona, Appellee,**

v.

**Gordon Emil LEE, Appellant.**

No. 1 CA–CR 88–402.

Court of Appeals of Arizona, Division 1, Department A.

March 30, 1989.

Review Denied June 27, 1989.

---

1.  *Everson v. Everson*, 24 Ariz..App. 239, 537 P.2d 624 (1975).

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

The sole issue on appeal is whether defendant's guilty plea was rendered involuntary because the trial court failed to inform him that he would not be eligible for early release credits, pursuant to A.R.S. §§ 41-1604.06 and -1604.07. This issue is raised by appellant, Gordon Emil Lee (defendant), in his appeal from convictions of five counts of attempted child molestation, all class 3 felonies, and from the sentences imposed. In its answering brief, the state raises an additional issue: whether the trial court's imposition of lifetime parole constitutes "possible fundamental error." Because we find no reversible error, we affirm the convictions and sentences.

## PROCEDURAL BACKGROUND

Defendant was originally charged with five counts of child molestation, class 2 felonies and dangerous crimes against children in the first degree, in violation of A.R.S. § 13-604.01. Defendant pled guilty to counts one through five, amended to charges of "attempted molestation of a child," all class 3 felonies and dangerous crimes against children in the second degree. As a result of the plea agreement, defendant was eligible for probation but if sentenced to prison, was required to serve one-half of the sentence actually imposed by the court before becoming eligible for release from confinement. A.R.S. § 13-604.01(G). The plea agreement included an attached addendum regarding special conditions of sentencing for dangerous crimes against children, which provided, in part:

> If sentenced to a term of imprisonment, the Defendant is not eligible for release from confinement on any basis until having served not less than one-half the sentence imposed by the court.

At the change of plea hearing, the trial court clearly advised defendant of the possible range of sentence, including the possibility of receiving a maximum sentence of fifteen years on each count, consecutive sentences on the five counts, and the fact he would not be eligible for release *on any basis* until he had served at least half of the sentence imposed by the court. Defendant indicated he understood these consequences of his plea. The court found defendant's plea voluntary, intelligent, and factually based. The trial court sentenced defendant to maximum fifteen-year terms of imprisonment on each count and ordered them to run consecutively. The trial court also ordered defendant placed on lifetime parole in accordance with A.R.S. § 13-604.01(I). Defendant timely appealed.

## VOLUNTARINESS OF GUILTY PLEA

Defendant argues that his guilty plea was involuntary, and in violation of Rule 17.2(b), Arizona Rules of Criminal Procedure, because the record does not indicate he was advised that he would not be entitled to early release credits after conviction of dangerous crimes against children, pursuant to A.R.S. § 41-1604.06(C).

Rule 17.2(b) sets forth the consequences of which a defendant must be advised in order to make a voluntary plea:

> Before accepting a plea of guilty or no contest, the court shall address the defendant personally in open court, informing him of and determining that he understand the following:
>
> . . . .
>
> b. the nature and range of possible sentence for the offense to which the plea is offered, *including any special conditions regarding sentence, parole,*

*or commutation imposed by statute....*

(Emphasis added).

Defendant relies on *State v. Dishong*, 122 Ariz. 218, 594 P.2d 84 (1979), in arguing that a defendant must be informed of his inability to earn early release credits in order to make a voluntary plea. *Dishong* involved a former sentencing statute that provided a prisoner could not be eligible for parole until a minimum sentence had been served, and also required a one-year term before a prisoner would be eligible for good behavior or double time deductions. *See* former A.R.S. § 13–653, Laws 1965, Ch. 20, § 3, renumbered as A.R.S. § 13–1410 and amended by Laws 1977, Ch. 142, § 66. The defendant in *Dishong* was never advised of the restrictions placed on his release by that statute. The Arizona Supreme Court held:

> If appellant was not aware that *he would not be eligible for parole until he had served his minimum sentence and* was not aware that he was not entitled to good behavior or double time deduction until he had served one year of his sentence, it is apparent that he was prejudiced by his lack of understanding of the complete provisions of the sentencing statute.

*Dishong*, 122 Ariz. at 219, 594 P.2d at 85 (emphasis added). *See also State v. Cuthbertson*, 117 Ariz. 62, 570 P.2d 1075 (1977) (where defendant was not advised of release conditions that could potentially increase his minimum term of imprisonment, his plea was not voluntary).

■ The impact of early release credits on parole eligibility since *Dishong* and *Cuthbertson* can be discerned from a review of the changes made by amendments to former A.R.S. §§ 31–251, –252, and –411. *See* Laws 1974, Ch. 137. Effective August 1974, "good-time" and "double-time" credits no longer affected the minimum sentence imposed, but were deducted from the maximum term imposed. Statutory calculation of the credits is now set forth in A.R.S. §§ 41–1604, –1604.07, which direct the Department of Corrections to create two classes of parole eligible prisoners.

A.R.S. § 41–1604.06(C). Only "class one" prisoners may earn release credits. A.R.S. § 41–1604.07(A). Defendants convicted of child molesting under A.R.S. § 13–604.01 are ineligible to be placed in "class one" status. A.R.S. § 41–1604.06(C). They may not, therefore, earn release credits. However, earned release credits do not affect parole eligibility dates as they did under former A.R.S. §§ 31–251 and –252. (*See* former A.R.S. 31–251(B) and –252(A) prior to amendment by Laws 1974, Ch. 137.) *See State v. Rice*, 110 Ariz. 210, 213–14, 516 P.2d 1222, 1225–26 (1973) (defendant would be entitled to the statutory deductions from his minimum sentence and eligible for parole prior to the expiration of the seventy-five-year minimum sentence imposed in that case). Under the new statutory scheme, all prisoners in parole eligible classifications, whether "class one" or "class two," are certified eligible for parole when, "as determined by adherence to the rules of the department," they are "classified within an eligible classification for three consecutive months occurring within five months immediately prior to the prisoner's earliest parole eligibility or for any three consecutive months thereafter." A.R.S. § 41–1604.06(D). Thus, "class one" prisoners and "class two" prisoners (including child molesters) who both must serve one-half of their respective terms, will both become parole eligible at the same time.

■ What the earned release credits accomplish under the new statute is the *"possible release,"* or an otherwise unsupervised parole release, when the time served by the prisoner added to the earned release credits equals the sentence imposed by the court. Thus, defendant's inability to earn early release credits under the new statutory scheme does not affect the date of his parole eligibility; defendant remains eligible for parole after he has served one-half of his sentence of fifteen years. Defendant's lack of ability, as a class two prisoner, to earn early release credits only increases the sentence, as compared to class one prisoners, if defendant were denied parole release after serving half his sentence.

The state points out that here, unlike in *Dishong,* defendant was fully advised that, pursuant to the special sentencing conditions of A.R.S. § 13–604.01, he would not be eligible for parole release on any basis until he had served half his sentence. He was also fully advised that he faced a maximum term of fifteen years. The state suggests that ineligibility for release credits thus was a collateral matter not required to be explained to defendant pursuant to Rule 17. We agree.

The supreme court in *Dishong* and *Cuthbertson* did not rely solely on the trial court's failure to advise of ineligibility for release credits as support for reversal of a guilty plea. Rather the court found that this failure, coupled with the failure to advise defendant he would have to serve the minimum sentence prior to becoming eligible for parole, required reversal. In fact, the *Dishong* court relied on *State v. Ellis,* 117 Ariz. 329, 572 P.2d 791 (1977), in holding that a defendant was prejudiced by not being aware that he had to serve the minimum sentence imposed by the court before becoming eligible for parole.

In *Ellis,* our supreme court provided guidance in determining whether a court has committed reversible error in failing to disclose a sentencing condition to a defendant entering a guilty plea:

> Violations of [Rule 17.2(b)] do not necessarily require the plea to be vacated. The appellate court should examine the sentence actually imposed. If the sentence contains any provision that the defendant was not aware of, that affects the manner in which the sentence or date of parole is computed, either the guilty plea should be vacated or the case remanded to determine if the defendant was actually aware of the provision absent from the record. As we stated in *Cuthbertson, supra,* "[h]owever, if the defendant was not prejudiced by his lack of understanding of the complete provisions of the sentencing statute, the error is not reversible error." 570 P.2d at 1077.

117 Ariz. at 333, 572 P.2d at 795.

■ The focus in *Ellis, Cuthbertson,* and *Dishong* was on the prejudice a defendant suffers by entering a guilty plea without being fully advised of its sentencing consequences. Indeed, the purpose behind Rule 17.2(b) is to ensure that a defendant makes an informed choice before pleading guilty. Here, however, we cannot find that defendant was either uninformed or prejudiced. The court informed defendant before accepting his plea that he faced a maximum term of fifteen years. The court also informed him he would be ineligible for release on any basis until he had served at least one-half his sentence. He was thus aware, when entering his plea, that he had bargained for a term of imprisonment between 7.5 and fifteen years on each count. That is exactly what he received. Advising him in addition that lack of release credits might require him to serve fifteen years did not add any information to that already received—that he might have to serve fifteen years. The information defendant received complied with the requirements of Rule 17.2(b).

Other courts support our position that it is unnecessary to advise a defendant regarding the availability of "good-time" credits. *See People v. Owens,* 108 Mich. App. 600, 310 N.W.2d 819 (1981) (Defendant argued his plea was involuntary because he was unaware that he would be ineligible for "good-time" or "special good-time credits." The court rejected the argument noting that the trial judge had clearly explained the minimum term to the defendant); *People v. Richards,* 106 Mich.App. 16, 307 N.W.2d 692, 693 (1981) (Defendant argued his plea was involuntary because he had not been informed the legislature had done away with "good-time" credits to the charge to which he had pled. The court responded, "there is no requirement that the court advise a defendant prior to accepting his guilty plea that 'good time' is not available."). The court in *Richards* noted the defendant had been properly advised that he would have to spend at least one year in prison.

■ Although we find compliance with Rule 17.2(b), we note that we should not find a plea involuntary where the missing

advice could not have been a material factor in defendant's decision to plead guilty, but involved only minor terms collateral to the decision to plead. *See State v. Crowder,* 155 Ariz. 477, 481, 747 P.2d 1176, 1180 (1987). Here, defendant has not alleged, nor are we able to discern from this record, that he would not have entered into this guilty plea had he been informed of his ineligibility for early release credits. In fact, we can infer from this record that defendant's awareness of this fact probably would *not* have affected his decision to plead guilty under these specific circumstances. *See, e.g., State v. Grijalba,* 157 Ariz. 112, 115, 755 P.2d 417, 420 (1988). Defendant was originally charged with five counts of child molestation, class 2 felonies. Four of the counts, involving a five-year old girl, were alleged to have occurred on October 13, 1987. The fifth count involved an eight-year old girl whom defendant was alleged to have molested in August 1987. Had the state alleged count five as a prior conviction pursuant to *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980), defendant would have faced up to thirty-three years imprisonment on each of the first four counts and twenty-two years on count five. *See* A.R.S. § 13–604.01(B), (D), and (H). Additionally, these sentences could have been imposed consecutively. A.R.S. § 13–604.01(J). Thus, the maximum term of imprisonment defendant was facing could have exceeded 100 years, and he would not have been eligible for release on any basis until he had served the *actual* sentence imposed by the court. A.R.S. § 13–604.01(E). Defendant was informed that the "worst case scenario" consequence of this plea was to reduce the potential maximum sentence to five consecutive terms of fifteen years, or a total of seventy-five years, with the potential of parole release after half his sentence had been served. We fail to see how the fact that defendant would not receive early release credits if he were not paroled after half his sentence was served would have affected his decision to plead guilty under these circumstances. *See Grijalba.*

■ We hold that the trial court did not commit reversible error in violation of Rule 17.2(b) by failing to inform defendant he would not be eligible for early release credits. A trial judge is not required to inform a defendant of every computational provision found in our statutes. *See Cuthbertson.* In this case, where defendant was clearly advised of his maximum potential sentence and that he could not be released on any basis before half his sentence was served, the trial court was not required to inform him of his inability to earn release credits after parole eligibility in order to comply with Rule 17.2(b).

## LIFETIME PAROLE

In its answering brief, the state requests this court to review the trial court's imposition of lifetime parole for "possible fundamental error," pursuant to our recent decision in *State v. Wagstaff,* 161 Ariz. 66, 775 P.2d 1130 (App.1988), *review granted* Nov. 23, 1988. In his reply brief, defendant stated that he "concurs in the request that the lifetime parole provision be stricken." However, we note that the state did not request that the lifetime parole provision be stricken, but merely requested this court to review whether possible fundamental error occurred.

In *Wagstaff,* we held that because "enforcement of the statute under present Arizona law is impossible, we hold that A.R.S. § 13–604.01(I) is invalid, insofar as it refers to lifetime parole for a defendant convicted of a dangerous crime against children in the first degree." 161 Ariz. at 70, 775 P.2d at 1134. The defendant in *Wagstaff* was ineligible for release prior to the expiration of his entire sentence, A.R.S. § 13–604.01(E), so he would have no unexpired sentence upon release during which he could be placed on parole. *See* A.R.S. §§ 31–412(A), –414; 161 Ariz. at 70, 775 P.2d at 1134. Here, defendant, as a second degree offender, could potentially be released after half his sentence had been served. A.R.S. § 13–604.01(G). If released, defendant would be subject to an additional term in which the court, society, and the Board of Pardons and Paroles would have a legitimate and enforceable

interest in supervising his conduct. *Cf., Yates v. United States*, 753 F.2d 70 (8th Cir.1985), *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985). We note that our supreme court has granted review in *Wagstaff* on the issue "whether the statute's bestowal of parole status should be upheld on the basis of an actual or presumed legislative intent that after serving his sentence, the defendant, if convicted of a subsequent sexual offense, shall receive the enhanced punishment prescribed by law for those who commit such offenses while on parole status." However, we need not decide here whether *Wagstaff* is distinguishable or renders the lifetime parole provision invalid.

■ Defendant did not raise this issue in his opening brief; the sole ground for his appeal was the involuntariness of his plea. If an error is not fundamental, an appellant's failure to raise the issue on appeal constitutes a waiver of that issue. *State v. Nirschel*, 155 Ariz. 206, 745 P.2d 953 (1987). Because such a waiver constitutes abandonment of the claim, *State v. McCall*, 139 Ariz. 147, 677 P.2d 920, *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984), an appellant may not raise a claim of error for the first time in his reply brief. *See also* Rule 31.13, Arizona Rules of Criminal Procedure.

■ This court must, however, review the record for fundamental error even if defendant fails to raise the issue on appeal. *State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984); A.R.S. § 13-4035. Our sole consideration is then whether the application of the lifetime parole provision is fundamental error.

■ In *Wagstaff*, the appellant clearly raised the issue regarding the invalidity of his lifetime parole in his opening brief and thus, this court did not reach the issue of whether the error was fundamental. However, subsequent to our decision in *Wagstaff*, our supreme court has treated the application of the lifetime parole provision as nonfundamental error, by specifically noting the existence of that issue but refusing to consider its merits where an appellant did not question the validity of the

lifetime parole provision on appeal. *See State v. Muldoon*, 159 Ariz. 295, 297 n. 1, 767 P.2d 16, 18 n. 1 (1988). We likewise consider this possible error to be nonfundamental, and decline to decide, in the absence of such a contention by defendant in his brief, whether the court improperly imposed lifetime parole. By this holding we have addressed the state's concern about whether any possible fundamental error occurred.

For the foregoing reason, the judgment of convictions and sentences are affirmed.

GERBER and BROOKS, JJ., concur.