847 P.2d 609

**STATE of Arizona, Appellee,**

v.

**Wesley Alan WOMACK, Appellant.**

**No. 1 CA–CR 89–753.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 29, 1992.

Review Denied March 30, 1993.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, for appellee.

Apache County Public Defender by David A. Brown, St. Johns, for appellant.

## OPINION

TAYLOR, Presiding Judge, Retired.

In our review of this case, we focus upon the distinction between avoiding arrest and resisting arrest.

Pursuant to a plea agreement, Wesley Alan Womack ("defendant") pled guilty to three charges: flight from a pursuing law enforcement vehicle, a class 5 felony; possession of marijuana, a class 6 felony; and resisting arrest, a class 6 felony. The trial court suspended defendant's sentence and imposed three years intensive probation on each count. As a condition of probation, defendant was ordered to serve one year in the county jail.

Defendant's plea of guilty to the charge of resisting arrest was entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Defendant appeals only from his conviction on this charge, contending that the State failed to set forth a sufficient factual basis for his conviction under the resisting arrest statute, Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–2508. We agree and reverse defendant's conviction.

## FACTS

The charges against defendant arose out of an incident occurring in St. Johns, Arizona, on December 11, 1987. The facts, as given by the prosecutor at the time of defendant's change of plea, are as follows:

> [BY MR. WING]: If th[is] matter were to proceed to trial, the evidence would be ... that on 7/11 ... 1987, Officer Lloyd Wolfe, a police officer with the City of

St. Johns Police Department, observed the defendant driving a red Honda motorcycle in the area of Cleveland and 13th West, here in St. Johns. The motorcycle did not have a taillight, so this officer attempted to stop the motorcycle. As he did so, the driver of the motorcycle, which was later identified to be the defendant, looked back at the police officer and then sped the motorcycle up to move away from the police officer.

Officer Wolfe was in a fully marked police vehicle. As he pursued the defendant's motorcycle, he activated his emergency lights and his siren over a distance of several miles. The defendant fled from the police officer with his equipment in full operation, the emergency equipment.

At times, the motorcycle went between 70 and 80 miles-per-hour in a residential district. At one location, he made a turn and lost partial control of the motorcycle, going up in the yard of a residence.

At two locations, those being at 5th South 13th West and at 7th South and 13th West, the defendant ran two stop signs during the commotion, the chase. A second fully marked police vehicle of the St. Johns Police Department with its emergency equipment in operation was also in pursuit.

After a distance of miles, the officers were able to locate the defendant and take him into custody.

At the time that he was arrested, he had in his possession, a small quantity or usable quantity of marijuana, which was submitted to DPS laboratory and analyzed to be a usable amount of marijuana.

THE COURT: Tom, did he resist the arrest?

MR. WING: That was driving a motorcycle in the manner likely to cause injury to [the] officer or to others along the route of the chase.

Additional facts contained in the police reports and made a part of the record prior to sentencing reveal that a total of four police officers and at least three police vehicles participated in the chase, that the stop and arrest occurred "without further incident" in a farming area adjacent to the community, and that the defendant was booked by the arresting officers for "flight from a law enforcement vehicle and possession of marijuana." The reports also indicate that Officer Wolfe's initial effort to effect a traffic stop of defendant was by use of his emergency lights and siren.

Defendant entered a plea agreement whereby he pled guilty to the charges of flight from a pursuing law enforcement vehicle, possession of marijuana, and resisting arrest. At the change of plea hearing, however, defense counsel argued that there was an insufficient factual basis to find defendant guilty of resisting arrest. Defendant timely appealed following the trial court's acceptance of his plea and the imposition of sentence.

## DISCUSSION

Defendant argues that his act of fleeing by motorcycle from the officers does not constitute resisting arrest under Arizona's statute defining that offense. His argument is twofold. First, he contends that his act of fleeing from the officers does not furnish a factual basis for that offense. Second, he asserts that the resisting arrest statute requires proof that he intended to place either the pursuing officers or other persons in risk of physical injury.[1] The statute defining the offense of resisting arrest, A.R.S. § 13–2508, states in pertinent part:

A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under

---

1. In his reply brief, defendant alluded to the imposition of double punishment due to his convictions for both resisting arrest and felony flight. While we will not address an assignment of error raised for the first time in the reply brief, *State v. Lee*, 160 Ariz. 489, 495, 774 P.2d 228, 234 (App.1989), we note that the double punishment statute, A.R.S. § 13–116, was not violated in this case because defendant's sentence was suspended and concurrent terms of probation were imposed.

color of such peace officer's official authority, from effecting an arrest by:

1. Using or threatening to use physical force against the peace officer or another; or

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

Defendant was charged with resisting arrest under subsection (A)(2).

■ Our current resisting arrest statute was derived from Haw.Rev.Stat. § 710–1026. Rudolph J. Gerber, *Criminal Law of Arizona* § 13–2508, at 357 (1978). "A statute adopted from another state is presumed to have been adopted with a construction previously placed upon it by the courts of that state." *State v. Flores*, 160 Ariz. 235, 239–40, 772 P.2d 589, 593–94 (App.1989). No Hawaii court has interpreted that state's statute with facts similar to those before us. The comment to the Hawaii statute, however, offers the following insight of its purpose as perceived by the commentator.

*The Code deals specifically with resisting arrest out of a desire to confine the offense to forcible resistance that involves some substantial danger to the person.* Mere non-submission ought not to be an offense. One who runs away from an arresting officer or who makes an effort to shake off the officer's detaining arm might be said to obstruct the officer physically, but this type of evasion or minor scuffling is not unusual in an arrest, *nor would it be desirable to make it a criminal offense to flee arrest.* In this case the proper social course is to authorize police pursuit and use of reasonable force to effect the arrest. If the actor is captured, he may be convicted of the underlying offense. If conviction cannot be had, it would be a grave injustice to permit prosecution for an unsuccessful effort, by an innocent man, to evade the police.

Haw.Rev.Stat. § 710–1026 cmt. (1985) (emphasis added) (footnote omitted); *accord* Gerber, *supra*, at 358; American Law Institute, *Model Penal Code and Commentaries* § 242.2, at 214 (1980).

The comment is not deemed to be an expression of legislative intent. We find, however, a similar legislative intent as reflected in the specific wording of our statute. *See City of Show Low v. Owens*, 127 Ariz. 266, 268, 619 P.2d 1043, 1045 (App. 1980) ("We consult first ... the language of the statute itself in order to determine legislative intent."). That intent, as we glean it from the statute, is to prohibit threats or any conduct that creates a substantial risk of injury to another, including the officer. As we read the statute, it prohibits assaultive behavior directed toward an arresting officer, not an arrestee's efforts to put as much distance as possible between himself and the officer. Defendant's conduct of fleeing from the officer was appropriately and adequately prohibited by A.R.S. § 28–622.01, flight from a pursuing law enforcement vehicle. To stretch the resisting arrest statute to cover defendant's act of fleeing is, in our opinion, violative of the rule that "[c]ourts will not read into a statute something that is not within the manifest intent of the Legislature as gathered from the statute itself." *Collins v. Stockwell*, 137 Ariz. 416, 420, 671 P.2d 394, 398 (1983).

In *State v. Sanchez*, 145 Ariz. 313, 701 P.2d 571 (1985) our supreme court had occasion to examine A.R.S. § 13–2502(A), escape in the third degree, as it applied to one who ran from an officer after being told he was under arrest. After pointing out the necessity of actual restraint by the officer or submission by the person before an arrest is accomplished, the court stated:

There is evidence that the legislature may never have intended these escape statutes to criminalize flight prior to arrest. The Arizona Criminal Code Commission proposed a set of escape statutes quite similar to those adopted by our legislature. In their commentary, the Criminal Code Commission writers noted:

Neither [nonviolent] nonsubmission nor flight are covered by these sections [resisting arrest and escape]. The proper course in such a case is to pursue or use reasonable force to overcome the suspect.

Arizona Criminal Code Commission, Arizona Revised Criminal Code, p. 238 (1975).

*Id.* at 315, 701 P.2d at 573. The court also referred to *State v. Swanson,* 34 Or.App. 59, 578 P.2d 411 (1978), in which that court, interpreting statutes similar to Arizona's and with similar commentaries, found that the legislature did not intend to make nonviolent flight from an attempted arrest criminal behavior.

In our opinion, the defendant's flight was conduct which prevented, without the use of resistance, the effectuation of his arrest. In other words, such conduct constituted avoiding arrest, not resisting arrest. This interpretation of the statute flows from what we deem to be a common sense application of the ordinary meaning of the statutory language. *See* A.R.S. § 1–213 ("Words and phrases shall be construed according to the common and approved use of the language."); *State v. Flores,* 160 Ariz. 235, 240, 772 P.2d 589, 594 (App.1989) (words of a statute are given their ordinary meaning unless from the context it appears that a different meaning is intended). This interpretation also is supported by the legislative policy and the historical background of the statute. *See State v. Hoag,* 165 Ariz. 215, 216, 797 P.2d 1233, 1234 (App.1990) (legislative intent determined by policy and historical background of statute); *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988) (the primary principle in statutory interpretation is to determine legislative intent). In substance, we "look to the policy behind the statute and to the evil that it was designed to remedy." *State v. Takacs,* 169 Ariz. 392, 395, 819 P.2d 978, 981 (1991).

Because we label defendant's conduct as avoiding arrest rather than resisting arrest, we deem it appropriate to define those terms as we apply them herein. *Webster's Ninth New Collegiate Dictionary* 1003 (1988) defines "resist" as follows: "to exert force in opposition"; "to exert oneself so as to counteract or defeat," "to withstand the force or effect of." "Resistance" is defined similarly as "an opposing or retarding force." *Id.*

In defining "resist" as applied to that state's resisting arrest statute, the Appellate Division of the Circuit Court of Connecticut stated that "[t]he word ["resist"] is derived from the Latin, its etymological meaning being "to stand against" or "to withstand." It is the opposition of force to force.... *There must be actual opposition or resistance,* making necessary, under the circumstances, the use of force." *State v. Avnayim,* 24 Conn.Supp. 7, 185 A.2d 295, 298–99 (App.Ct.1962) (emphasis added).

"Avoid," on the other hand, is defined as "to depart or withdraw from" or "to keep away from." *Webster's Ninth New Collegiate Dictionary* 120 (1988). In analyzing defendant's conduct, it appears to us that "avoiding arrest" most accurately describes his actions as he fled from the officers. When an individual is the object of an attempt to effect his or her arrest, the individual may submit to the arrest, avoid the arrest, or resist the arrest. Only the latter conduct constitutes the statutory offense of resisting arrest.

Defining criminal behavior and establishing penalties for violating criminal laws are functions of the legislature, not the judiciary. *State v. Wagstaff,* 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990). Our legislature has broad discretion in determining culpable and innocent behavior. *In re Pima County Juvenile Appeal No. 74802–2,* 164 Ariz. 25, 28, 790 P.2d 723, 726 (1990). While criminal statutory language need not provide for an interpretation amounting to a mathematical certainty, *Brockmueller v. State,* 86 Ariz. 82, 84, 340 P.2d 992, 994, *cert. denied,* 361 U.S. 913, 80 S.Ct. 258, 4 L.Ed.2d 184 (1959), it is required to give fair warning that an individual's actions are prohibited and thus subject to punishment. *Franzi v. Superior Court,* 139 Ariz. 556, 562, 679 P.2d 1043, 1049 (1984). We cannot say as a matter of law that defendant was on notice that his conduct constituted resisting arrest as he fled from Officer Wolfe.

In reaching the above conclusion, we are mindful that

[d]ue process notions of fundamental fairness require that criminal offenses be defined in terms sufficient to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle for the requirement is that no person should be required, at the risk of his liberty, to speculate as to the meaning of a criminal statute. Thus, "a statute which forbids * * * an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application violates the first essential of due process of law."

*State v. Limpus,* 128 Ariz. 371, 375, 625 P.2d 960, 964 (App.1981) (citation omitted) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1925)).

■ When a criminal statute is susceptible of more than one reasonable interpretation, the rule of lenity requires the courts to resolve any doubt in favor of the defendant. *State v. Pena,* 140 Ariz. 545, 549–50, 683 P.2d .744, 748–49 (App.1983). We believe that to interpret defendant's flight, as described in the record before us, as resisting arrest, would resolve any doubts contrary to the above rule and also would subject the statute to a serious vagueness challenge.

■ We next examine defendant's flight to determine if it amounted to the use of "any other means creating a substantial risk of causing physical injury to the peace officer or another." *See* A.R.S. § 13–2508(A)(2). From the record before us, we conclude that it did not.

The act of defendant fleeing from the officer did not by itself place the officer in danger. In addition, if the act of the officer pursuing defendant at high speeds is construed as "creating a substantial risk of causing physical injury to the ... officer or another," we believe that in determining whether defendant's conduct was in violation of A.R.S. § 13–2508(A)(2), the decision to pursue and the manner of pursuit lies with the officer and not with the defendant. While such a response by the officer is an option he may choose when a subject flees, the officer did not have the option of driving in such a manner as to place *himself or others* at substantial risk of injury. The statute governing the officer's conduct, A.R.S. § 28–624, states in pertinent part:

B. The driver of an authorized emergency vehicle may while operating [appropriate equipment] ... under normal atmospheric conditions ...:

. . . .

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

3. Exceed the prima facie speed limits so long as he does not endanger life or property.

4. Disregard regulations governing direction of movement or turning in specified directions.

. . . .

D. The provisions of this section do not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of *all persons* nor do these provisions protect the driver from the consequences of his reckless disregard for the safety of others.

(Emphasis added.) As stated by the Colorado Supreme Court, "a red light and a siren do not constitute a license to travel at any speed under any circumstances." *City and County of Denver v. DeLong,* 190 Colo. 219, 545 P.2d 154, 156 (1976).

There is nothing in the record to suggest that Officer Wolfe drove in other than a safe and prudent manner. Neither his speed nor that of the other officers is mentioned. In the absence of evidence to the contrary, we will presume that they drove their vehicles in conformance with the law. Additionally, we are not persuaded that Officer Wolfe intentionally or otherwise placed the residents of St. Johns in jeopardy just because defendant fled when the officer attempted to cite him for an inoperable taillight. Nor do we believe the officer would place his own life in jeopardy over such an inconsequential matter. One should not sink his ship on such a small pebble.

Finally, the state has not established the presence of any other persons at a time and place when defendant's conduct placed them at substantial risk of injury. The allegation that defendant drove in a manner likely to cause injury to what the prosecutor generically described as "others along the route" does not by itself establish the presence of others within the zone of substantial risk at the time of defendant's passing. Although we are not unmindful of the dangers inherent in a high-speed chase through a residential neighborhood, the record is devoid of the required specific facts amounting to strong evidence that the officer or another experienced a substantial risk of physical injury as required by the statute.

■ In addition to our conclusion that mere flight does not constitute resisting arrest, we have another concern in the application of that statute to the facts of this case.

Generally, an intent to arrest will accompany the restraint amounting to an arrest. *See Bey v. State*, 355 So.2d 850, 852 (Fla. Dist.Ct.App.1978). Although the subjective intent of the officers involved is not dispositive of whether an arrest has actually been made, *United States v. Beck*, 598 F.2d 497, 500 (9th Cir.1979), we cannot foresee how the crime of resisting arrest can be committed without an intent on the part of the officer to make an arrest.

It is undisputed that at the time he first signaled defendant to pull over, Officer Wolfe intended only to issue a traffic citation, not to arrest defendant. It may be, as defendant fled the scene and Officer Wolfe gave chase, that at some point the officer's intent changed from the issuance of a citation to that of arresting defendant. If that fact occurred, it was not part of the factual basis given to the court to support a plea of guilty to resisting arrest, nor does it appear in the record.

We find it difficult to see how defendant's initial flight could be characterized as resisting arrest, since no arrest was being attempted. The inquiry thus posed is whether defendant could be guilty of resisting something which did not then exist—that is, an impending arrest. We think not. If an intent to arrest was formed at some point in the pursuit and defendant's further flight is characterized as resisting arrest, we cannot determine from the record when or where this point existed or how defendant was made aware of his increased wrongdoing, since no new or different signals were conveyed to him by the officers.

Defendant also argues that there was an insufficient factual basis to establish his culpable mental state for all the elements of the charge of resisting arrest. Because we have resolved the issue of whether defendant's conduct was sufficient to support the charge of resisting arrest in his favor, we need not address this last argument.

## CONCLUSION

For the foregoing reasons, we find that defendant's nonviolent flight constituted an insufficient factual basis upon which to charge defendant with resisting arrest. Because we find the legislature did not intend to proscribe defendant's conduct under the resisting arrest statute, we reverse defendant's conviction on that count and remand to the trial court with directions to dismiss the charge of resisting arrest.

CONTRERAS, J., concurs.

LANKFORD, Judge, dissenting.

I respectfully dissent. I cannot agree that the state failed to show a sufficient factual basis for defendant's conviction under the resisting arrest statute, A.R.S. § 13–2508. While the prosecutor might easily have charged the defendant with a lesser crime under the circumstances, the factual basis is sufficient to convict defendant for resisting arrest.

### I.

The facts recited by the prosecutor at the time of defendant's change of plea are as follows.

St. Johns police officer Lloyd Wolfe observed defendant operating a motorcycle without a tail light. The officer, who was

driving a marked police vehicle, attempted to stop the motorcycle. As Officer Wolfe did so, the defendant looked back at him and then sped away.

Officer Wolfe activated his vehicle's emergency lights and siren. He and an officer in another police vehicle chased defendant at speeds between 70 and 80 miles per hour through a residential district. On one occasion, the defendant lost partial control of the motorcycle and entered a residence's yard. On two occasions, the police saw him drive through stop signs.

After a chase of several miles, the officers arrested defendant. Defendant did not offer any physical resistance to the officers. A subsequent search of defendant revealed a substance later determined to be marijuana.

Defense counsel argued at the change of plea hearing that there was an insufficient factual basis to find defendant guilty of resisting arrest. The trial judge disagreed and found that a factual basis for the plea existed and that the plea was knowingly, intentionally, and voluntarily made.

The statute which defines the offense, A.R.S. § 13–2508, states in pertinent part:

A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:

1. Using or threatening to use physical force against the peace officer or another; or

2. *Using any other means creating a substantial risk of causing physical injury to the peace officer or another.*

(Emphasis added). Defendant was charged with resisting arrest under subsection (A)(2).

Whether flight by vehicle from a pursuing police officer constitutes resisting arrest appears to be an issue of first impression under this statute. In interpreting a statute, we look first to its language. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). The statu-

tory elements of the offense under subsection (A)(2) are these:

(1) the effectuation of an arrest is prevented by defendant's conduct;

(2) the interfering conduct is intentional;

(3) the attempt to arrest is by one reasonably known to the accused to be a peace officer and is acting as a peace officer;

(4) the interference is by means creating a substantial risk of physical injury to the officer or another.

In my judgment, a suspect's flight is conduct which prevents the effectuation of an arrest. This interpretation of the statute flows from a common sense application of the ordinary meaning of the statutory language. *See State v. Flores*, 160 Ariz. 235, 240, 772 P.2d 589, 594 (App.1989) (words of statute given ordinary meaning unless from context it appears that a different meaning intended). This interpretation is also supported by the legislative policy and the historical background of the statute. *See Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988) (primary principle in statutory interpretation is to determine legislative intent); *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985) (legislative intent determined by considering policy behind statute); *State v. Hoag*, 165 Ariz. 215, 216, 797 P.2d 1233, 1234 (App.1990) (legislative intent determined by policy and historical background of statute).

As noted by the majority, our current resisting arrest statute was derived from Hawaii Rev.Stat. § 710–1026. The comment to the Hawaii statute suggests that mere flight from a pursuing police officer alone is *not* sufficient conduct to constitute this offense. *Comment*, Hawaii Rev.Stat. § 710–1026 (1985 replacement). *Accord* R. Gerber, *Criminal Law of Arizona*, § 13–2508 at p. 358 (1978); *Model Penal Code and Commentaries*, § 242.2 at 214 (1980).

However, flight is an offense when it endangers a pursuing police officer or others. Hawaii's statute accords with the Model Penal Code.[2] *Comment* to Hawaii

---

2. *Model Penal Code* § 242.2 states in pertinent     part:

Rev.Stat. § 710–1026. In turn, the official commentary to the Model Penal Code specifically indicates that high-speed flight from a pursuing law enforcement vehicle, unlike merely running away from a policeman, is an offense. The comment states that a resisting arrest statute like Arizona's "reaches certain situations in which the circumstances of flight from arrest expose the pursuing officers to substantial danger." *Model Penal Code and Commentaries, supra* at 214.

The Arizona statute thus applies, as its language suggests, when two elements join: flight by the accused and resultant danger. It is beyond doubt that a high speed vehicular chase poses substantial risk both to the pursuing officers and other motorists, pedestrians and bystanders who may be present. The risk is particularly clear in this case, in which the pursuit traversed a residential neighborhood at speeds so great they exceeded even the permissible speeds for a controlled access interstate highway in a rural area.

I vigorously disagree with the suggestion that the danger to the pursuing police officer and others is the officer's own doing. (See at 113, 847 P.2d at 614.) By the majority's reasoning, police officers are not entitled to pursue a fleeing motorist when the chase is hazardous. To require the officer to cease pursuit encourages suspects to flee in a dangerous manner, thereby perverting the purpose of the statute. The statute is intended to deter such dangerous behavior by criminalizing it, not to handcuff peace officers seeking to effectuate an arrest.

Nor can I agree that the record lacks evidence that defendant used a "means creating a substantial risk of causing physical injury to the peace officer or another." A.R.S. § 13–2508(A)(2). Two police officers engaged in a high-speed chase of defendant through a residential district and on a route past two stop signs. The risk to the officers was obvious. While there is no evidence that others were present and subjected to a particular danger, it is the *risk* of injury to others which the statute forbids. The inference is strong that at least some residents were present in the residential neighborhood in which this chase took place. As the majority concedes, "the dangers [are] inherent in a high-speed chase through a residential neighborhood ..." (At 114, 847 P.2d at 615). In my view, the evidence of the circumstances of the chase—including the location in an inhabited area—is sufficient to demonstrate substantial risk to others. Finally, even if the evidence were insufficient for this purpose, it is enough under the statute that the pursuing officers were endangered.

Although not clearly argued, defendant's brief suggests that he cannot be convicted of resisting arrest because the initial attempt to make a traffic stop did not constitute an arrest. I agree that a peace officer who stops a vehicle for a traffic violation does not necessarily "arrest" the violator. *See State v. Taras,* 19 Ariz.App. 7, 9–10, 504 P.2d 548, 550–51 (1972). However, the attempt to stop this defendant was only the beginning of the events which transpired. *Cf. State v. Davis,* 119 Ariz. 529, 582 P.2d 175 (1978) (sustaining defendant's conviction for obstructing justice after officer's pursuit of vehicle for erratic driving).

Defendant does not contest that the officer was entitled to stop defendant's vehicle because of the missing or inoperable tail light. See A.R.S. §§ 28–925, 937, 939 (requiring rear lights on vehicles). Defendant responded to the officer's effort to stop defendant's vehicle by speeding away. The officer then used his lights and siren and pursued the defendant.

As soon as the officer activated his lights and siren, defendant's continued attempt to elude the officer constituted unlawful flight from a pursuing law enforcement vehicle, a class 5 felony pursuant to A.R.S. § 28–622.01. Defendant admitted his guilt to this offense and does not challenge the factual basis for it on appeal.

A person commits a misdemeanor if, for the purpose of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, ...

Having thus committed the offense of unlawful flight, defendant was clearly subject to arrest by the officer. When the officer ultimately effected the arrest, the defendant did not physically resist. However, actual custody is not required for the crime of resisting arrest to occur. To hold otherwise would reward successful resistance of lawful authority. This court has previously held that ultimately acceding to arrest did not exculpate a defendant who successfully resisted an earlier attempt to arrest him by making threats to a lone officer. *State v. Harney*, 128 Ariz. 355, 625 P.2d 944 (App.1981).

This defendant resisted arrest when he continued to elude the officer by dangerous high-speed flight after it became apparent that he was subject to arrest for unlawful flight. Whether an arrest has occurred "rests upon an evaluation of all the surrounding circumstances to determine whether a reasonable man innocent of any crime would have thought he was being arrested if he had been in defendant's shoes." *State v. Waicelunas*, 138 Ariz. 16, 18, 672 P.2d 968, 970 (App.1983). Similarly, a person resists arrest when he prevents a peace officer from effecting what a reasonable person would believe is an attempt to arrest him.

The factual basis in this case is sufficient to satisfy this definition. Any reasonable person would believe he would be arrested after initiating a high speed chase to avoid a traffic stop.

I therefore conclude that the defendant's conduct in this case provided an adequate factual basis for conviction under A.R.S. § 13–2508 for resisting arrest.

I now turn to defendant's contention that the factual basis was insufficient to establish his culpable mental state. The resisting arrest statute, A.R.S. § 13–2508, requires that the defendant act with "in-

tent." [3] The defendant argues that another statute, § 13–202(A), renders the intent requirement applicable to all elements of the offense. Defendant's argument relies upon A.R.S. § 13–202(A), which provides:

If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears.

Because § 13–202(A) requires intent for every element of the offense, defendant argues the state must prove that he intended not only to prevent the officers from making the arrest but also to expose the officers or others to possible physical injury. Defendant does not seriously dispute that he intended to prevent his own arrest when he .fled. However, he asserts that the facts were insufficient to show that he acted with the objective of creating risk of injury.

Defendant offers no authority for his argument. I find nothing in the language, purpose, or history of the present statute to support the construction he urges.

The statutory language is clear. The intent required for resisting arrest is set forth in paragraph (A) of § 13–2508, the paragraph establishing as an element of the offense the act of preventing an officer from effecting arrest. Subparagraphs one and two separately set forth additional elements of the offense and do not refer to intent. The Legislature required intent, but required it only as to the first element of the offense. By setting forth the elements separately, the resisting arrest statute sufficiently "distinguish[ed] among the elements of [the] offense." Thus, by the language of A.R.S. § 13–202(A) itself, the rule that the intent requirement applies to all elements is not invoked. The defendant therefore need not have intended to place the officers at risk of injury; all the statute

---

**3.** A.R.S. § 13–105(6), defining culpable mental states, provides:

(a) "Intentionally" or "with the intent to" means, with respect to a result or to conduct

described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct.

requires is that defendant's conduct created such a risk.[4]

However, except for strict liability crimes, a minimum requirement of culpability is required for each material element of an offense. *Model Penal Code and Commentaries*, § 2.02(1) at p. 225 (1980). When the culpability requirement for a material element is not prescribed by law, "such element is established if a person acts purposely, knowingly or recklessly with respect thereto". *Id.* at 226.

More precisely, under the Model Penal Code formulation of the resisting arrest statute (which is similar to the Arizona statute), the state need not show the defendant's intent to injure the officers. *Model Penal Code and Commentaries*, § 242.2 at 220. Under the Model Code, a showing of defendant's recklessness "will suffice with respect to the elements that the actor created a substantial risk of bodily harm...." *Id.* A defendant is reckless when he is aware of and disregards a substantial and unjustifiable risk that the circumstance exists or that the result will occur. A.R.S. § 13–105(6)(C). "The risk must be of such a nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.* A defendant acts knowingly when he is aware or believes that his conduct is of the nature specified by the statute or that circumstances described by the statute exist. A.R.S. § 13–105(6)(B). Furthermore, proof of the state of mind of a defendant is generally circumstantial, and what the defendant does or fails to do may be evidence of that state of mind. *See State v. Vann*, 11 Ariz.App. 180, 463 P.2d 75 (1970) (intent of defendant can be inferred from defendant's conduct).

In this case, the evidence provided a factual basis for a finding that the defendant's conduct was knowing or reckless. He drove at 70–80 miles per hour through a residential district disregarding stop signs. The defendant disregarded an apparent and grave risk that his conduct could cause serious physical injury to the officers or to an innocent passerby.

The record of defendant's change of plea shows that defendant intended to avoid arrest. It shows that he operated his motorcycle in flight from police at great risk to others. The statute does not demand that the state establish a separate intent to expose the pursuing officers or others to that risk.

The evident purpose of the resisting arrest statute is to protect our police officers and citizens from substantial risk of physical injury. The record shows that this defendant's conduct in evading arrest created such a risk. I would affirm the conviction.

Retired Judge JOHN F. TAYLOR was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court, pursuant to art. 6, section 20 of the Arizona Constitution and A.R.S. section 38–813 (1985).

---

4. We further note that defendant's assertion is contrary to the common law doctrine which required only that the defendant intend the act rather than the crime's result. 1 C. Torcia, *Warton's Criminal Law* § 25, p. 115–122 (14th ed. 1978). *See also State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978) (criminal intent is simply the state of mind that coexists with the doing of an act).