266 P.3d 1070

**STATE of Arizona, Appellee,**

v.

**Devan Eugene CAGLE, Appellant.**

**No. 1 CA–CR 10–0362.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 3, 2011.

Thomas C. Horne, Arizona Attorney General, By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section And Barbara A. Bailey, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, By Louise Stark, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BROWN, Judge.

¶ 1 Devan Eugene Cagle appeals from his conviction and sentence for resisting arrest. He argues the trial court erred when it failed to instruct the jury regarding the culpable mental state for one of the elements of the offense and that the prosecutor exacerbated the error during closing argument. For the following reasons, we affirm.

## BACKGROUND

¶ 2 A police officer observed Cagle tailgating another vehicle, making an unsafe lane change, and driving at 100 miles-per-hour on the I–10 freeway. The officer activated his emergency lights and siren and stopped Cagle on the shoulder of the freeway. Cagle provided his license to the officer, who then ran a computer records check. A second officer responded to assist and the officers decided to take Cagle into custody.

¶ 3 The officers asked Cagle to step out of his vehicle. When Cagle ignored the request, one officer grabbed Cagle's wrist and advised him he was under arrest. Cagle pulled his arm back and refused to exit his vehicle, requiring the officers to forcibly remove him. Cagle resisted the officers' efforts by stiffening his body and bracing himself with his hands and legs in the driver's seat. Even after the officers managed to drag him out of the vehicle, Cagle continued to resist their efforts by lying on his stomach on the roadway next to his vehicle with his arms under his body to prevent the officers from handcuffing him. Because Cagle was halfway into the outside traffic lane, oncoming vehicles had to swerve into the next lane to avoid hitting the officers as they struggled to handcuff Cagle. The vehicles were close enough that the officers could feel the "blast of wind" from them as they went past. The officers were eventually able to handcuff Cagle and remove him from the roadway without serious injury.

¶ 4 Cagle was indicted on one count of resisting arrest, a class six felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13–2508(A)(2) (2010),[1] based on the theory that Cagle's actions in attempting to prevent his arrest caused a substantial risk of injury to the police officers.[2] After a jury found him guilty, the trial court sentenced Cagle to a presumptive 1.75–year term of imprisonment. Cagle timely appealed.

---

1. Absent material revisions to a statute after the date of an offense, we cite the current version.

2. The statute provides as follows:
   A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
   1. Using or threatening to use physical force against the peace officer or another; or
   2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

## DISCUSSION

¶ 5 Cagle argues that the trial court's instruction to the jury on resisting arrest was inadequate because it allowed the jury to convict him without finding that he intended to create a substantial risk of physical injury to the officers. We review de novo whether jury instructions correctly state the law. *State v. Gallardo*, 225 Ariz. 560, 567, ¶ 30, 242 P.3d 159, 166 (2010). Only when the instructions taken as a whole may have misled the jury will we find reversible error. *State v. Sucharew*, 205 Ariz. 16, 26, ¶ 33, 66 P.3d 59, 69 (2003).

¶ 6 At trial, the court instructed the jury as follows:

> The crime of resisting arrest requires proof that:
>
> 1. A peace officer, acting under official authority, sought to arrest either the defendant or some other person; and
>
> 2. The defendant knew, or had reason to know, that the person seeking to make the arrest was a peace officer acting under color of such peace officer's official authority; and
>
> 3. The defendant intentionally prevented, or attempted to prevent the peace officer from making the arrest; and
>
> 4. The means used by the defendant to prevent the arrest involved any other means creating a substantial risk of causing physical injury to the peace officer or another.
>
> Whether the attempted arrest was legally justified is irrelevant.

In connection with this instruction, the trial court further instructed on the culpable mental states of "intentionally" and "knowingly" as defined in A.R.S. § 13–105(10)(a) and (b) (2010). Prior to trial, Cagle had submitted a very similar instruction, but part four of his instruction read: "The means used by the defendant to prevent the arrest involved use of any other means *with the intent* to create a substantial risk of physical injury to either the peace officer or another." (Emphasis added.) At trial, however, Cagle did not object to the trial court's proposed resisting arrest instruction, which did not contain the

mental state language he previously requested.

¶ 7 In closing argument, defense counsel asserted that Cagle should be found not guilty because he did not intend to create any substantial risk of injury to the officers:

> Now, the State's arguing that these officers were put at risk because this incident occurred on the freeway, but what the State forgets is that [Cagle] must have intentionally created the situation that put the officers at risk, plus the statute mandates that it must be a substantial risk, not just any risk.
>
> . . .
>
> The officers put [Cagle] where he was. [Cagle] simply did not intentionally create, the wording from the statute, he did not intentionally create any situation where the officers were at risk of any harm for the purpose of preventing his arrest.
>
> . . .
>
> He never said, 'hey I'm going to drag you into traffic.' He simply never intended to create a situation that would put these officers in a substantial risk of injury, and that is what is required in the statute for him to be convicted. He has to create the situation that put them at risk in order to prevent or attempt to prevent his arrest.

¶ 8 During the State's rebuttal argument, the prosecutor stated:

> Now, I would just like to touch on a couple of points from ... the defense's closing, and the first is this notion of intentionally and then substantial risk, and I'm going to pull the standard back up. Let's go back a little bit.
>
> And I think it's important to analyze this, because the standard the defense gave you is not correct. It's not what's been given to you in your instructions and it's not the law. The word intentionally is actually in part three, that the defendant intentionally prevented or attempted to prevent the peace officer from making an arrest. Not that he intentionally placed them in substantial risk of physical injury[.]

At this point, defense counsel interrupted and asked to approach the bench. He argued that the prosecutor was "basically say-

ing that my analysis of the law is incorrect, and I believe it is correct." Defense counsel explained his view that the "intentional mens rea" applies not only to preventing or attempting to prevent arrest but also to creating a substantial risk of injury to the officer. After further discussion with defense counsel, the court overruled the objection. The prosecutor resumed and then concluded his argument without further objection, telling the jury that Cagle only had to intend to prevent an arrest and that, with regard to the fourth element, "the means used by the defendant to prevent the arrest involved substantial risk of physical injury to either the peace officer or another."

¶ 9 The State contends that we must apply fundamental error analysis because Cagle failed to properly preserve this issue at trial. Assuming without deciding that Cagle appropriately preserved this issue and fundamental error review does not apply, we disagree with Cagle's assertion that the jury was misled as to the appropriate mental state requirement for the crime of resisting arrest.

¶ 10 The resisting arrest statute requires proof that a person "intentionally" prevented or attempted to prevent a law enforcement officer from effecting an arrest by (1) using or threatening to use physical force, or (2) using *any other means* to create a substantial risk of injury to another person. A.R.S. § 13–2508(A). Cagle asserts that the court's instruction to the jury, both on its face and as interpreted during closing argument, was flawed because it allowed the jury to convict him without finding that he "intended or knew that his rigidity was causing the officers to drag him into the highway."[3] Cagle's argument seems to rely on A.R.S. § 13–202(A) (2010), which provides as follows:

> If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall

apply to each such element unless a contrary legislative purpose plainly appears. Cagle therefore asserts that the mental state requirement of "intentionally" applies to all elements of the offense of resisting arrest.

▪ ¶ 11 However, the plain language of A.R.S. § 13–2508(A) supports the conclusion that in order to commit resisting arrest a person need act "intentionally" only as to "preventing or attempting to prevent a person … from effecting an arrest" and that the culpable mental state of "intentionally" has no application to the creation of a substantial risk of harm. *See Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (stating that courts look first at the statute's language as it is "the best and most reliable index of a statute's meaning"). Thus, the statute requires that a defendant create an actual, substantial risk of harm, but does not include a requisite mental state for this element. Stated differently, "intentionally" applies to the defendant's conduct, not the attendant result. *Cf. State v. Siner*, 205 Ariz. 301, 304, ¶ 13, 69 P.3d 1022, 1025 (App. 2003) (distinguishing between conduct and result in declining to apply transferred intent doctrine).

¶ 12 Additionally, Cagle's reliance on the statutory construction rule set forth in A.R.S. § 13–202(A) is misplaced. Section 13–2508 distinguishes among the elements of the offense by including the culpable mental state requirement in section (A) of the statute, and omitting the requirement from subsections (1) and (2). *See* A.R.S. § 13–202(A). As such, the structure of the resisting arrest statute is different than other statutes that have applied a mental state requirement to all elements of the offense. *See State v. Witwer*, 175 Ariz. 305, 308, 856 P.2d 1183, 1186 (App.1993) (finding that A.R.S. § 13–1404(A) did not adequately distinguish among the elements); *State v. Rineer*, 131 Ariz. 147, 148–49, 639 P.2d 337, 338–39 (App. 1981) (concluding that A.R.S. § 13–1203 did not distinguish among the elements of the

---

**3.** Cagle does not argue that the "intent" requirement of § 13–2508(A) applies to the phrase "using any other means." *Cf. State v. Barr*, 183 Ariz. 434, 442, 904 P.2d 1258, 1266 (App.1995) (explaining that the jury instructions given "required a finding that Appellant intentionally *used*

*some means* to prevent, or to attempt to prevent, his arrest") (emphasis added). Thus, the only question we address here is whether the State was required to prove that Cagle intentionally created a substantial risk of injury under § 13–2508(A)(2).

offense). If the legislature had intended a specific culpable mental state to apply to all of the elements of subsections (1) and (2) of § 13–2508(A), it could have done so by moving the word "intentionally" to the end of section (A), or by including a specific mental state requirement in subsections (1) and (2). *See State v. Brown*, 204 Ariz. 405, 411–12, ¶ 28, 64 P.3d 847, 853–54 (App.2003) (Howard, J., concurring) (concluding that had the legislature desired to include mens rea of intentionally in portion of statute at issue it would have used "precise language defined by statute").

¶ 13 Our interpretation is consistent with the Revised Arizona Jury Instructions ("RAJI"), *see* RAJI Stat.Crim. 25.08,[4] and furthers the objectives of the statute. *See State v. Mitchell*, 204 Ariz. 216, 219, ¶ 16, 62 P.3d 616, 619 (App.2003) ("The purpose of the resisting arrest statute is to protect peace officers and citizens from substantial risk of physical injury."); *see also* Rudolph J. Gerber, *Criminal Law of Arizona* 2508–3 (2d ed. 1993) ("The statute's purpose is to prohibit threats or any conduct that creates a substantial risk of injury to another, including the officer.").

¶ 14 Although not cited by Cagle, *In re Jessi W.*, 214 Ariz. 334, 152 P.3d 1217 (App. 2007), is one of only two reported decisions discussing the applicable mental state requirements under A.R.S. § 13–2508(A)(2). The issue in *Jessi W.* was whether the person preventing or attempting to prevent an arrest must know not only that the person trying to effect the arrest is a peace officer, but also have knowledge that the person was "acting under color of such peace officer's official authority." *Id.* at 337, ¶ 13, 152 P.3d at 1220. Because the phrase "acting under color of such peace officer's official authority" is a non-restrictive clause, we concluded that the culpable mental state of "knowingly" did not apply to that portion of the statute. *Id.* at ¶ 16. We also cited A.R.S. § 13–202(A), stating that A.R.S. § 13–2508(A) "prescribes a culpable mental state of intent without distinguishing among the elements of the

offense, so each element of the offense must be committed intentionally." *Id.* at ¶ 12. However, our opinion provided no analysis in support of this statement and, more significantly, it is contradicted by the balance of the decision. Thus, the statement that the culpable mental state of "intentionally" applies to all elements of resisting arrest is dictum and is contextually inconsistent given that the only issue before the court was whether the mental state requirement of "knowingly" applies to each separate element of the offense.

¶ 15 The other reported decision is *State v. Womack*, 174 Ariz. 108, 847 P.2d 609 (App. 1992). At issue in *Womack* was whether the defendant's act of fleeing from officers on a motorcycle could constitute the offense of resisting arrest. *Id.* at 110, 847 P.2d at 611. The majority in *Womack* distinguished between "resisting arrest," which requires "actual opposition or resistance," and merely "avoiding arrest." *Id.* at 112, 847 P.2d at 613. The majority concluded that the defendant's conduct was more properly viewed as "avoiding arrest" and vacated his conviction. *Id.* at 112–14, 847 P.2d at 613–15. In his dissent, Judge Lankford disagreed with the majority's conclusion that defendant's conduct in fleeing did not provide a factual basis for conviction under A.R.S. § 13–2508 for resisting arrest. *Id.* at 117, 847 P.2d at 618. Although not reached by the majority, Judge Lankford further discussed the defendant's contention that the factual basis was insufficient to establish the culpable mental state for all the elements of resisting arrest. *Id.* at 114, 117–18, 847 P.2d at 615, 618–19.

¶ 16 As in the present case, the defendant in *Womack* argued that A.R.S. § 13–202(A) makes the culpable mental state of "intentionally" applicable to all elements of the offense. *Id.* at 117, 847 P.2d at 618. Judge Lankford disagreed, finding "nothing in the language, purpose, or history of the present statute to support the construction [defendant] urges."

The statutory language is clear. The intent required for resisting arrest is set forth in [section] (A) of § 13–2508, the

---

4. Consistent with our construction of the statute, the RAJI does not require the State to prove that a defendant intentionally created a substantial risk of physical injury. We express no opinion as to the accuracy of the remainder of the RAJI.

[section] establishing as an element of the offense the act of preventing an officer from effecting arrest. [Subsections] one and two separately set forth additional elements of the offense and do not refer to intent. The Legislature required intent, but required it only as to the first element of the offense. By setting forth the elements separately, the resisting arrest statute sufficiently 'distinguish[ed] among the elements of [the] offense.' Thus, by the language of A.R.S. § 13–202(A) itself, the rule that the intent requirement applies to all elements is not invoked. The defendant therefore need not have intended to place the officers at risk of injury; all the statute requires is that defendant's conduct created such a risk.

*Id.* at 117–18, 847 P.2d at 618–19. We agree with Judge Lankford's analysis in support of his conclusion that the resisting arrest statute does sufficiently distinguish among the elements of the offense under A.R.S. § 13–202(A). Therefore, the State was not required to prove that Cagle intentionally created a substantial risk of injury.[5]

¶ 17 In sum, we conclude there was no error, fundamental or otherwise, in the trial court's failure to apply "intentionally" to the element of "creating a substantial risk of causing physical injury" in the jury instructions. We likewise find no error by the prosecutor in arguing the elements of the offense as set forth in the instructions.

## CONCLUSION

¶ 18 Based on the foregoing, we affirm Cagle's conviction and sentence.

CONCURRING: DANIEL A. BARKER, Presiding Judge and MARGARET H. DOWNIE, Judge.

---

**5.** We do not express any opinion as to Judge Lankford's remaining analysis. For instance, Judge Lankford also concluded that "except for strict liability crimes, a minimum requirement of culpability is required for each material element of an offense." *Id.* at 118, 847 P.2d at 619 (citing Model Penal Code & Commentaries § 202(1) at 225 (1980)). He therefore would have applied the mental state of "recklessly" to the "substantial risk" element. *Id.* Cagle has not argued that the trial court should have instructed the jury on that basis.