IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SAMKEITA JAHVEH JURDEN, *Appellant*.

No. 1 CA-CR 14-0002
FILED 6-23-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-150667-001
The Honorable Brian Kaiser, Commissioner

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adriana M. Zick
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

## OPINION

Judge Patricia K. Norris delivered the opinion of the Court, in which Presiding Judge Margaret H. Downie joined. Judge Randall M. Howe dissented.

**N O R R I S**, Judge:

¶1          Samkeita Jahveh Jurden appeals from his convictions and sentences for two counts of resisting arrest, one count of aggravated assault, and one count of criminal trespass in the second degree. On appeal, Jurden argues that the two resisting arrest convictions, one for each officer involved in the altercation, constituted a single offense under the resisting arrest statute, Arizona Revised Statutes ("A.R.S.") section 13-2508(A)(1) (Supp. 2014),[1] and thus his second resisting arrest conviction and sentence violated the Double Jeopardy Clause. We agree with Jurden. Accordingly, we vacate his second conviction and sentence for resisting arrest and affirm his other convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2          On September 24, 2012, Jurden—shirtless and shoeless— walked into a department store with an unleashed dog. A store security guard called police after Jurden refused to leave. Two police officers arrived and asked Jurden to leave the store, but he refused to do so. The officers then attempted to arrest Jurden for criminal trespass and a struggle broke out between Jurden and the officers. Jurden resisted their attempts to arrest him by biting and kicking one officer, and by flailing and pulling his arms away from the other officer. After struggling with Jurden for approximately two minutes, the officers subdued and handcuffed him.

¶3          A grand jury indicted Jurden on two counts of aggravated assault, two counts of resisting arrest (counts 3 and 4) under A.R.S. § 13-2508(A)(1)—one count for each officer—and one count of criminal trespass in the second degree. The jury found Jurden guilty on one count of aggravated assault, on both counts of resisting arrest, and on the criminal trespass count. The superior court sentenced Jurden to 10 years for

---

[1]Although Jurden's altercation with police occurred in September 2012, the Arizona Legislature has not amended A.R.S. § 13-2508 since then. Thus, we cite to the current version of the statute.

aggravated assault, 3.75 years on each resisting arrest conviction, and 4 months for criminal trespass, with the sentences to run concurrently. In imposing concurrent sentences, the court explained:

> I can't make a determination or I can't find, based on what I saw at trial or what I see in the video, that the defendant was somehow targeting or intending to commit the offenses specifically as to one officer and then another. Perhaps, if there were some lengthy delay between one event and another, there might be a better justification of the idea of consecutive sentences. But this all starts and ends in just one big melee, really, and so the idea of consecutive sentences here doesn't seem appropriate to me, under the circumstances.

## DISCUSSION

¶4        As explained above, on appeal Jurden argues the two resisting arrest convictions constituted but one offense and thus his second resisting arrest conviction and sentence violated the Double Jeopardy Clause of the United States Constitution. U.S. Const. amend. V. Jurden raises this argument for the first time on appeal and thus we review only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005). We note, however, that a sentence in violation of the Double Jeopardy Clause constitutes fundamental error. *State v. McGill*, 213 Ariz. 147, 153, ¶ 21, 140 P.3d 930, 936 (2006).

¶5        The Double Jeopardy Clause affords a defendant three basic protections: first, it bars a second prosecution for the same offense after an acquittal; second, it bars a second prosecution for the same offense after a conviction; and third, it bars multiple punishments for the same offense—which is the issue presented in this appeal. *Ohio v. Johnson*, 467 U.S. 493, 497-98, 104 S. Ct. 2536, 2540, 81 L. Ed. 2d 425 (1984); *see also State v. Eagle*, 196 Ariz. 188, 190, ¶ 6, 994 P.2d 395, 397 (2000) (citing *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980)). While the bar on multiple trials is designed to ensure the government "does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence," the bar on multiple punishments for the same offense serves a different purpose. *Johnson*, 467 U.S. at 498-99, 104 S. Ct at 2540. That prohibition is designed to "ensure that the sentencing discretion of courts is confined to the limits

established by the legislature." *Id*. at 499, 104 S. Ct. at 2540-41. This is because "the substantive power to prescribe crimes and determine punishments is vested with the legislature." *Id*.

¶6 As an initial matter, we note the parties agree, and the evidence supports, that the two resisting arrest charges and resulting convictions arose out of a single, uninterrupted event. Thus, we are not faced with a situation involving distinct, separate events which could give rise to multiple counts and convictions for resisting arrest. *See, e.g.*, *People v. Moreno*, 108 Cal. Rptr. 338, 340 (Cal. App. Dep't Super. Ct. 1973) (defendant resisted arrest at residence then approximately one-half hour later resisted officer while being brought to booking desk).

¶7 Whether a particular course of conduct involves more than one offense turns on the legislatively established "allowable unit of prosecution." As explained by the United States Supreme Court in *Sanabria v. United States*:

> It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. But once Congress has defined a statutory offense by its prescription of the "allowable unit of prosecution," that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice.

437 U.S. 54, 69-70, 98 S. Ct. 2170, 2181-82, 57 L. Ed. 2d 43 (1978) (citations omitted); *see also State v. Burdick*, 211 Ariz. 583, 585, ¶ 5, 125 P.3d 1039, 1041 (App. 2005) ("Whether a defendant can be punished for each victim of the crime of disorderly conduct is an issue of legislative intent."); *State v. Powers*, 200 Ariz. 123, 126, ¶ 8, 23 P.3d 668, 671 (App. 2001) ("Whether one or more offenses occurred here requires us to interpret [the statute].").

¶8 Although Arizona case law has not explicitly defined "allowable unit of prosecution," our courts have implicitly recognized that a "unit of prosecution" defines the scope of the conduct that comprises the offense. *See State v. McPherson*, 228 Ariz. 557, 560, ¶ 7, 269 P.3d 1181, 1184 (App. 2012) (separate punishments for different images of child pornography appropriate "because the legislature intended the unit of

prosecution to be each individual 'depiction'"); *Burdick*, 211 Ariz. at 585-86, ¶¶ 5-10, 125 P.3d at 1041-42 (addressing whether "unit of prosecution" for disorderly conduct is conduct or victims); s*ee also State v. Schoonover*, 133 P.3d 48, 80 (Kan. 2006):

> If the double jeopardy issue arises because of convictions on multiple counts for violations of a single statute, the test is: *How has the legislature defined the scope of conduct which will comprise one violation of the statute*? Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution.

(Emphasis added).

¶9        Thus, Jurden's argument requires us to determine what the Arizona Legislature has defined as the allowable unit of prosecution under A.R.S. § 13-2508. Is it—as Jurden contends—the *arrest* itself, thus giving rise to only one possible offense of resisting arrest no matter how many peace officers are involved in the incident, or is it—as the State contends—the number of *peace officers* involved in the incident, thus giving rise to the possibility of multiple offenses and multiple punishments for resisting arrest? Reviewing the issue de novo, we begin with the text of A.R.S. § 13-2508. *State v. Hansen*, 215 Ariz. 287, 289, ¶¶ 6-7, 160 P.3d 166, 168 (2007) (appellate court reviews issue of statutory construction de novo; "best and most reliable index of a statute's meaning is its language"); *McGill*, 213 Ariz. at 153, ¶ 21, 140 P.3d at 936 (appellate court reviews de novo whether State has violated defendant's right against double jeopardy). Section 13-2508 reads as follows:

> **A.** A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
>
> 1. Using or threatening to use physical force against the peace officer or another.

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

3. Engaging in passive resistance.

**B.** Resisting arrest pursuant to subsection A, paragraph 1 or 2 of this section is a class 6 felony. Resisting arrest pursuant to subsection A, paragraph 3 of this section is a class 1 misdemeanor.

**C.** For the purposes of this section, "passive resistance" means a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest.

¶10 On its face, A.R.S. § 13-2508(A) can reasonably be read to define the offense as intentionally preventing or attempting to prevent the effectuation of an arrest, with paragraphs (1), (2), and (3) delineating the various ways in which that single offense may be committed. Section 13-2508, however, can also reasonably be read as adopting a unit of prosecution that focuses on the peace officer. Indeed, our case law has recognized that A.R.S. § 13-2508(A)(1) and (2) prohibit certain physical acts directed toward a peace officer, *see State v. Womack*, 174 Ariz. 108, 111, 847 P.2d 609, 612 (App. 1992) ("As we read the [resisting arrest] statute, it prohibits assaultive behavior directed toward an arresting officer"); *State v. Mitchell*, 204 Ariz. 216, 219, ¶ 16, 62 P.3d 616, 619 (App. 2003) ("The purpose of the resisting arrest statute is to protect peace officers and citizens from substantial risk of physical injury."), and a violation of A.R.S. § 13-2508(A)(1) is not a victimless crime. *State v. Sorkhabi*, 202 Ariz. 450, 453, ¶ 11, 46 P.3d 1071, 1074 (App. 2002). Accordingly, under this construction, a person would be subject to more than one resisting arrest charge if more than one peace officer was involved in the incident, even if the person's conduct occurred during the course of a single, uninterrupted event. *See supra* ¶ 6.

¶11 Because the statute's plain language reveals two reasonably plausible units of prosecution, it is ambiguous. *See State ex rel. Montgomery v. Harris*, 234 Ariz. 343, 345, ¶ 12, 322 P.3d 160, 162 (2014) (statute is ambiguous when reasonably susceptible to differing interpretations); *State v. Whitman*, 234 Ariz. 565, 566, ¶¶ 7-8, 324 P.3d 851, 852 (2014) (ambiguity exists when statute can be reasonably read in two ways). Accordingly, we turn to secondary rules of statutory construction to determine legislative

intent. *Harris*, 234 Ariz. at 345, ¶¶ 12-13, 322 P.3d at 162. Examining the historical background, statutory context, and other relevant factors, we conclude the Legislature's intended unit of prosecution was the arrest itself.

¶12 Before 1977, our resisting arrest statute, as construed by the Arizona Supreme Court and this court, allowed a person to resist an illegal arrest. *See Dugan v. State*, 54 Ariz. 247, 250, 94 P.2d 873, 874 (1939) ("person illegally arrested may resist the arrest, using such force as may be reasonably necessary"); *State v. DeRoss*, 9 Ariz. App. 497, 499, 454 P.2d 167, 169 (1969) (same); *State v. Robinson*, 6 Ariz. App. 424, 427, 433 P.2d 75, 78 (1967) (resisting arrest statute designed to aid police officers in discharging their duties; statute presupposes lawful arrest).

¶13 In 1977, the Legislature enacted a new criminal code which became effective on October 1, 1977. 1977 Ariz. Sess. Laws, ch. 142, § 86 (1st Reg. Sess.). In revamping the criminal code, the Legislature adopted the current version of A.R.S. § 13-2508 minus one minor modification in 1980[2] and the addition of passive resistance in 2012. 2012 Ariz. Sess. Laws, ch. 265, § 1 (2nd Reg. Sess.). In a sharp break with the pre-1977 version of the statute and its governing precedent, the Legislature specified that a person would be guilty of resisting arrest even if the arrest was illegal. Thus, under the new statutory language, a person would be guilty of resisting arrest if he intentionally prevented a "person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest." In adopting this wording and breaking with prior precedent, we believe the Legislature intended to criminalize conduct that interfered with state authority, that is, conduct that interfered with the arrest. In so doing, the Legislature embraced the common law's understanding of resisting arrest—that the gravamen of the offense is against state authority. *See Purnell v. State*, 827 A.2d 68, 80 (Md. 2003) (common law recognized crime of resisting arrest as "an offense against the State"), *cited with approval in State v. Le Noble*, 216 Ariz. 180, 182-83, ¶¶ 11-12, 164 P.3d 686, 688-89 (App. 2007) (defendant entitled to jury trial for resisting arrest because it was a crime at common law which entitled defendant to a jury trial); Rudolph J. Gerber, Criminal Law of Arizona 2508-2, -3 (2d ed. Supp. 2000) ("The gravamen of the [resisting arrest] statute is the theory that the court, not the street, is the proper place to test the legality of arrest."). Indeed, although the drafters of the 1977 criminal code abolished all common law crimes, 1977 Ariz. Sess. Laws, ch. 142, § 39 (1st

---

[2]The Legislature amended the statute in 1980 by adding the phrase "or attempting to prevent" to subsection (A). 1980 Ariz. Sess. Laws, ch. 229, § 27 (2nd Reg. Sess.).

Reg. Sess.), "when an act is declared to be a crime by its common law name, common law interpretations and cases are persuasive as determining whether any particular act constitutes the statutory offense." *Engle v. State*, 53 Ariz. 458, 465, 90 P.2d 988, 991 (1939).

¶14        Further, when the Legislature enacted the new criminal code in 1977, it placed the resisting arrest statute in the same chapter with statutes that dealt with other crimes against state authority, specifically: escape; promoting prison contraband; failure to appear; resisting an order directing, regulating, or controlling a motor vehicle; and hindering prosecution. 1977 Ariz. Sess. Laws, ch. 142, § 86 (1st Reg. Sess.). Thus, viewed in context with these other statutes, *J.D. v. Hegyi*, 236 Ariz. 39, 41, ¶ 6, 335 P.3d 1118, 1120 (2014) ("Words in statutes . . . cannot be read in isolation from the context in which they are used."), and taking into account that the Legislature designed the statute to remove the illegality of an arrest as a justification for the resistance, we conclude the Legislature intended to criminalize a person's conduct in interfering with, that is, resisting, state authority. Under this construction, the allowable unit of prosecution focuses on the arrest, not on the number of peace officers involved in the resistance.

¶15        This construction of the statute is further supported by the Legislature's 2012 amendment to broaden the definition of resisting arrest to include "passive resistance." 2012 Ariz. Sess. Laws, ch. 265, § 1 (2nd Reg. Sess.). The statute defines passive resistance as "a non-violent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest." A.R.S. § 13-2508(C). On its face, this language describes a unit of prosecution grounded in the arrest, not the officer.

¶16        The dissent disagrees with this construction of the statute. It concludes the "statute's plain language demonstrates that resistance to arrest depends on each person resisted—on each victim—not on the event of the arrest itself." *See infra* ¶ 28. First, when, as is the case here, a statute may reasonably be construed in more than one way, "determining its meaning is not advanced by assertions that one plausible interpretation must be right because it reflects the 'plain meaning.'" *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 329, ¶ 34, 322 P.3d 139, 146 (2014) (Bales, J., dissenting).

¶17        Second, the dissent asserts this court has "previously recognized that A.R.S. § 13-2508 is a victim-directed crime." *See infra* ¶ 29. The cases the dissent cites in support of this conclusion did not, however, address the double jeopardy issue presented here. *See State v. Mitchell*, 204 Ariz. 216, 62 P.3d 616 (App. 2003) (discussing meaning of "effecting an

arrest"); *State v. Sorkhabi*, 202 Ariz. 450, 46 P.3d 1071 (App. 2002) (discussing necessity of physical act being directed towards a police officer and rejecting argument that resisting arrest is "victimless crime"); *State v. Womack*, 174 Ariz. 108, 847 P.2d 609 (App. 1992) (holding avoiding arrest is not the same as resisting arrest).

¶18 Third, to be sure, as the dissent notes, this court has indeed recognized that the purpose of the resisting arrest statute is to protect police officers and others from the "substantial risk of physical injury." *Mitchell*, 204 Ariz. at 219, ¶ 16, 62 P.3d at 619. But the Legislature did not design the statute to simply protect police and others from the risk of physical injury. Instead, the Legislature designed the statute to criminalize a person's conduct that presents a risk of harm in a particular context—when the actor is interfering with the peace officer's efforts to exercise state authority. The opening words of the statute drive this point home: "A person commits resisting arrest by intentionally preventing or attempting to prevent . . . a peace officer, acting under color of such peace officer's official authority, from effecting an arrest . . . ."

¶19 Fourth, the dissent focuses on the elements of the statute in concluding it is unambiguous. *See infra* ¶¶ 26-27. But that is not the applicable test under the Double Jeopardy Clause when, as here, a person is convicted of multiple violations of a single statute. In such a case, the legislature's description of the scope of the conduct that constitutes the criminal act controls, not the individual elements that make up the crime. As the Kansas Supreme Court has explained:

> The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather, the key is the nature of the conduct proscribed. . . . The unit of prosecution [is] determined by the scope of the course of conduct defined by the statute rather than the discrete physical acts making up that course of conduct or the number of victims injured by the conduct.

*Schoonover*, 133 P.3d at 65.

¶20 Finally, construing A.R.S. § 13-2508 to be a victim-directed crime as the dissent does would allow fortuitous events to control the number of resisting arrest charges that could be brought by the State when a person resists arrest in a single, uninterrupted event. Would there be 30

victims and thus 30 charges for resisting arrest if a person waved a gun in the direction of the 30 officers who had been called to the scene to arrest him? Or, would there be 15 victims and thus 15 charges for resisting arrest if a person was simply lying on the ground, passively resisting, after 15 officers arrived at the scene to make his arrest? Based on the wording and history of A.R.S. § 13-2508, we do not believe the Legislature intended the number of peace officers involved in a single act of resistance to control the number of offenses and punishments for resisting arrest.

¶21　　When, as here, there is a single uninterrupted event, the number of officers involved in the event does not turn a single offense into multiple offenses under A.R.S. § 13-2508. We agree with Jurden that only one offense of resisting arrest occurred under the circumstances presented here, and thus, he was sentenced to multiple punishments in violation of the Double Jeopardy Clause. *See State v. Brown*, 217 Ariz. 617, 621, ¶ 13, 177 P.3d 878, 882 (App. 2008) ("[W]hen a defendant is *convicted* more than once for the same offense, his double jeopardy rights are violated even when, as in the current case, he receives concurrent sentences."). We therefore vacate his second conviction for resisting arrest (count 4) and the sentence imposed on that count. *See Powers*, 200 Ariz. at 127, ¶ 16, 23 P.3d at 672 (vacating second conviction and sentence for multiplicitous offense); *see also State v. Jones*, 185 Ariz. 403, 407-08, 916 P.2d 1119, 1123-24 (App. 1995) (vacating second kidnapping conviction and sentence arising out of single, definite act).

## CONCLUSION

¶22　　For the foregoing reasons, we vacate Jurden's second conviction and sentence for resisting arrest. We affirm his other convictions and sentences, however.

**H O W E**, Judge, dissenting:

**¶23**     I respectfully dissent. The majority rules that the right against double jeopardy prohibits Jurden from being convicted of two counts of resisting arrest out of a single event, even though Jurden committed separate criminal acts against each police officer who was struggling to arrest him. The majority does so by finding that the resisting arrest statute, A.R.S. § 13–2508, is ambiguous about whether it applies on a per-arrest or a per-victim basis—whether it is event-directed or victim-directed—and then uses secondary rules of statutory construction to hold that the Legislature intended for the statute to apply on a per-arrest basis.

**¶24**     The problem with the majority's analysis, however, is that in finding A.R.S. § 13–2508 ambiguous, it fails to examine the words of the statute to determine if they are subject to more than one reasonable interpretation; it merely declares that they are. This leads to another problem. Untethered from the statute's actual words, the majority is left to divine the Legislature's intent from the statute's "historical background, statutory context, and other relevant factors," *supra* ¶ 11, comparatively weak tools of construction that are themselves open to ambiguity. Moreover, the majority does not adequately address how its analysis is compatible with this Court's prior decisions holding that the Legislature intended the statute to be victim-directed. When the statute's language is examined and the relevant decisions from this Court are considered, the answer is clear and contrary to the majority's analysis: a defendant can be convicted of more than one count of resisting arrest arising out of a single event without violating double jeopardy if the defendant has committed the criminal acts composing that offense against more than one officer.

**¶25**     Whether a defendant has received multiple punishments for committing one offense depends on the Legislature's intent. The "substantive power to prescribe crimes and determine punishments is vested with the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *see also Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("[T]he legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments."). "[T]he question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States*, 450 U.S. 333, 344 (1981). Thus, if the Legislature intends to impose multiple punishments for a single

offense, the punishments are not truly multiple for purposes of double jeopardy. *Id.*

¶26 Although the majority finds A.R.S. § 13–2508 ambiguous "on its face" about whether it is event-directed or victim-directed, it does so without examining the very things that make up the "face" of a statute: its words.[3] No statute identifies itself as event-directed or victim-directed; that depends on the Legislature's intent for the statute. *Johnson*, 467 U.S. at 499 ("[T]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."). And the best and most reliable indication of that intent is the statute's language. *State v. Hansen*, 215 Ariz. 287, 289 ¶ 7, 160 P.3d 166, 168 (2007). If the language is clear and unequivocal, *id.*, we need not resort to other methods of interpretation, *State v. Christian*, 205 Ariz. 64, 66 ¶ 6, 66 P.3d 1241, 1243 (2003).

¶27 Contrary to the majority's declaration of ambiguity, the words of A.R.S. § 13–2508 are clear and unequivocal that the crime of resisting arrest is victim-directed. The resisting arrest statute provides in relevant part:

> A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
>
> 1. Using or threatening to use physical force against the peace officer or another.
>
> 2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.
>
> 3. Engaging in passive resistance.

---

[3]Of course, a statute's words are not the only source of ambiguity; ambiguity may also result from "the general scope and meaning of [the] statute when all its provisions are examined," *State v. Sweet*, 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). But the majority fails to explain how the provisions of A.R.S. § 13–2508, when considered together, result in ambiguity.

A.R.S. § 13–2508(A). "Passive resistance" is "a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest." A.R.S. § 13–2508(C). Thus, the statute requires proof that an individual (1) intentionally prevented or attempted to prevent (2) a person reasonably known to him to be a peace officer acting under color of authority (3) from effecting an arrest by (4) (a) using or threatening physical force, (b) creating a substantial risk of physical injury to the officer, or (c) engaging in passive resistance.

¶28       The statute's plain language demonstrates that resistance to arrest depends on each person resisted—on each victim—not on the event of the arrest itself. As the preamble provides, to violate A.R.S. § 13–2508, an individual must perform one of the actions defined by subsection (A) to prevent "a person" from effecting an arrest. The statute then lists alternative ways in which the individual can commit the offense; all these alternatives are directed towards "a person," whether it be a peace officer or another. Specifically, for subsections (A)(1) and (A)(2), the individual must use or threaten to use physical force "against the peace officer or another" or use any other means that creates a substantial risk or causes physical injury "to the peace officer or another." A.R.S. § 13–2508(A)(1)–(2). For subsection (A)(3), an individual resists arrest by intentionally engaging in passive resistance, that is, by engaging in a nonviolent physical act or failing to act intending to impede, hinder, or delay a person from effecting an arrest. Under the words of the statute, an individual commits the offense not by resisting the event of an arrest, but by resisting the peace officer effecting the arrest. The statute is thus not event-directed, but victim-directed.[4]

¶29       This interpretation of A.R.S. § 13–2508 is not original. This Court has previously recognized that A.R.S. § 13–2508 is a victim-directed crime. *See State v. Mitchell*, 204 Ariz. 216, 219 ¶ 16, 62 P.3d 616, 619 (App. 2003) ("The purpose of the resisting arrest statute is to protect peace officers and citizens from substantial risk of physical injury."); *State v. Sorkhabi*, 202 Ariz. 450, 453 ¶ 11, 46 P.3d 1071, 1074 (App. 2002) ("By the plain language of the statute, resisting arrest requires the defendant to prevent, or attempt

---

[4] The majority claims that I am merely analyzing the elements of the offense of resisting arrest and not the "legislature's description of the scope of the conduct." *Supra* ¶ 19. But because the "scope of the conduct" proscribed by a statute is described by the elements of the offense in that statute, I fail to see the distinction. No matter how the analysis is characterized, however, I am analyzing the words of A.R.S. § 13–2508 to determine whether they clearly and unequivocally show that the statute is victim-directed, an analysis the majority declines to perform.

to prevent, arrest by actions defined under § 13–2508(A), while directed against another individual."); *see also State v. Womack*, 174 Ariz. 108, 111, 847 P.2d 609, 612 (App. 1992) (providing that the legislative intent of A.R.S. § 13–2508, which was adopted from Hawaii's statute, "is to prohibit threats or any conduct that creates a substantial risk of injury to another, including the officer"); 1 Rudolph J. Gerber, *Criminal Law of Arizona* 2508–3 (2d ed. 1993 & Supp. 2000) ("The statute's purpose is to prohibit threats or any conduct that creates a substantial risk of injury to another, including the officer."). The majority disregards these decisions because they do not address the double jeopardy issue. *See supra* ¶ 17. But that does not diminish their effect; they address the issue before us today—whether the statute is event-directed or victim-directed—and resolve it contrary to the majority's conclusion.

¶**30**       Because the plain language demonstrates that resisting arrest is a victim-directed crime, when a defendant has resisted more than one person, the individual can be charged with and convicted of more than one count of resisting arrest—one for each person that the individual has committed criminal conduct against—without running afoul of the Double Jeopardy Clause. *See Albernaz*, 450 U.S. at 344 ("Where Congress intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution."); *see also State v. Burdick*, 211 Ariz. 583, 585–86 ¶¶ 5–10, 125 P.3d 1039, 1041–42 (App. 2005) ("[W]here crimes against persons are involved we believe a separate interest of society has been invaded with each victim and that, therefore, where two persons are assaulted, there are two separate offenses."); *State v. Riley*, 196 Ariz. 40, 45–46 ¶¶ 17–19, 992 P.2d 1135, 1140–41 (App. 1999) (holding the defendant properly convicted of multiple counts of armed robbery against bank employees even though the defendant robbed only the bank). Consequently, Jurden's two convictions for resisting arrest arising from his single arrest do not violate the Double Jeopardy Clause.

¶**31**       Despite the statute's language and our prior decisions demonstrating that the statute is victim-directed, the majority believes that the Legislature could not have intended for it to be interpreted that way. *Supra* ¶ 20. If it were, the majority claims, the number of resisting arrest offenses an individual could face would depend on a "fortuitous event[]"— the number of officers involved in an arrest. The majority presents two hypotheticals to illustrate its point.

¶**32**       But the majority misunderstands the proper analysis, and neither hypothetical accurately describes how the statute works. As noted throughout my dissent, an individual commits resisting arrest only if he commits the statutorily-proscribed conduct against a peace officer effecting

14

an arrest. Thus, merely waving a gun "in the direction of" 30 peace officers—without additional evidence that each of those 30 officers was attempting to effect the individual's arrest—does not mean that the individual committed 30 acts of resisting arrest. Likewise, an individual who passively lies on the ground when 15 officers arrive on the scene has not committed 15 acts of resisting arrest by passive resistance without additional evidence that each of the 15 officers was attempting to effect the individual's arrest. Mere attendance at the scene of an arrest does not make a peace officer a victim of resisting arrest; the officer must be attempting to effect an arrest before he may be a victim. The majority consequently fails to show that interpreting the statute as victim-directed causes absurd results. The majority's argument does not change that the Legislature intended the statute to be victim-directed, which means that Jurden was properly convicted of two counts of resisting arrest.

¶33 The majority bases its contrary conclusion that A.R.S. § 13–2508 is an event-directed crime not on the statute's language or any decision interpreting it, but on the statute's historical background, its statutory context, and the Legislature's 2012 amendment that added "passive resistance" as a way of committing resisting arrest. *See supra* ¶ 11. But these circumstances are themselves ambiguous and consequently too thin to bear the weight that the majority puts on them.

¶34 The majority first finds that the statute is event-directed because when it was enacted in 1977 as part of the new Arizona Criminal Code, it was a "sharp break" from the prior law on resisting arrest. *Supra* ¶ 13. Under pre-1977 law, an individual was permitted to resist an illegal arrest, but the Legislature did not keep that provision in the new A.R.S. § 13–2508. According to the majority, this decision signifies that the Legislature wanted to bring A.R.S. § 13–2508 in line with the common law, which provided that resisting arrest was a crime against the State.

¶35 The majority, however, provides no authority stating that the Legislature made the change for this reason. The Legislature may have had any number of reasons for making such a change. It may have simply believed that prohibiting an individual from resisting an arrest whether or not it was legal enhanced the safety of peace officers. Making the change for *that* reason is consistent with a peace officer/victim-directed interpretation of the statute. Moreover, the majority's argument fails to account for this Court's decisions—all decided after 1977—that A.R.S. § 13–2508 is a victim-directed crime. *See Mitchell*, 204 Ariz. at 219 ¶ 16, 62 P.3d at 619; *Sorkhabi*, 202 Ariz. at 452 ¶ 9, 46 P.3d at 1073; *Womack*, 174 Ariz. at 111, 847 P.2d at 612.

¶36        The majority also notes that A.R.S. § 13–2508 is organized in the Arizona Criminal Code with other crimes that the majority classifies as "crimes against state authority," such as escape, failure to appear, and hindering prosecution. *Supra* ¶ 14. Undoubtedly, resisting arrest has similar aspects to those other crimes, which explains its inclusion in a section with those crimes in the criminal code. But that does not mean that resisting arrest is not a victim-directed crime. Unlike escape, failure to appear, and hindering prosecution, resisting arrest cannot be committed without physical resistance to another person that puts that person's safety or well-being at risk. Moreover, the organizational placement of the statute means little in the face of subsequent decisions from this Court holding that resisting arrest is a victim-directed crime. *See supra* ¶ 29.

¶37        The majority next finds that because the Legislature amended the statute in 2012 to include "passive resistance," the amendment further indicates the Legislature's intent that the statute be an event-directed crime. *See supra* ¶ 15. But nothing in the amendment changes the statute's focus on the peace officer as the victim. Before the amendment, the statute was victim-directed because an individual committed the offense by using or threatening physical force against a peace officer or creating a substantial risk of physical injury to a peace officer to prevent the peace officer from effecting an arrest. A.R.S. § 13–2508(A)(1)–(2). The amendment merely adds a third way of committing the crime, passive resistance. A.R.S. § 13–2508(C). The statute nevertheless remains victim-directed. An individual engaging in passive resistance still must direct his resistance towards someone else; without a peace officer effecting an arrest, the individual need not engage in passive resistance.

¶38        The amendment had no effect on changing the interpretation of A.R.S. § 13–2508 for yet another reason. When the Legislature enacted the amendment, it was aware that this Court had already determined in *Mitchell*, *Sorkhabi*, and *Womack* that A.R.S. § 13–2508 was a victim-directed crime and that the purpose of the statute was to protect peace officers and citizens from substantial risk of physical injury. *See State v. Box*, 205 Ariz. 492, 496, 73 P.3d 623, 627 (App. 2003) (noting that "the legislature is presumed to know existing law when it enacts a statute"). Thus, contrary to the majority's position, the Legislature added "passive resistance" merely to broaden the scope for actions that can constitute resisting arrest. The amendment consequently does not support the majority's position. The factors the majority relies on are ambiguous and do not clearly support its interpretation of the resisting arrest statute.

¶39        The Legislature indeed could have chosen to draft A.R.S. § 13–2508 as event-directed, so that a defendant would be guilty of only one

resisting arrest crime regardless of the number of peace officers the defendant resisted. However, it did not. The Legislature drafted the statute as victim-directed because it wanted to protect peace officers from the substantial risk of injury when they effectuate arrest, as the statute's clear language provides and as this Court has repeatedly recognized. Under this correct understanding of the law, Jurden was properly convicted of two counts of resisting arrest because he committed separate criminal acts against two police officers. For that reason, I dissent.



Ruth A. Willingham · Clerk of the Court
FILED: ama