IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO
_____

SCOTT ALLEN WOODINGTON,
*Petitioner,*

*v.*

HON. CHRISTOPHER BROWNING AND HON. KYLE BRYSON,
JUDGES OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA,
IN AND FOR THE COUNTY OF PIMA,
*Respondents,*

*and*

THE STATE OF ARIZONA,
*Real Party in Interest.*

No. 2 CA-SA 2016-0024
Filed June 22, 2016
_____

Special Action Proceeding
Pima County Cause No. CR20153529001

**JURISIDICTION ACCEPTED; RELIEF DENIED**
_____

COUNSEL

Dean Brault, Pima County Legal Defender
By James L. Fullin and Dmitry Kashtelyan, Assistant Legal
Defenders, Tucson
*Counsel for Petitioner*

Barbara LaWall, Pima County Attorney
By Jacob R. Lines, Deputy County Attorney, Tucson
*Counsel for Real Party in Interest*

---

**OPINION**

---

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

---

V Á S Q U E Z, Presiding Judge:

**¶1**       In this special action, petitioner Scott Woodington challenges the determinations of the respondent judge and respondent presiding judge that he was not entitled to a second peremptory challenge to remove the assigned judge after Woodington was arraigned a second time. Finding no abuse of discretion, we accept jurisdiction but deny relief.

**Factual and Procedural Background**

**¶2**       In September 2015, Woodington was indicted and arraigned on a charge of second-degree murder. The state later moved to amend the indictment, and Woodington moved to dismiss or, in the alternative, to remand the matter to the grand jury. The respondent judge, Judge Christopher Browning, determined there were "enough areas of concern in the presentation to the Grand Jury" to merit a new presentation and remanded the matter for a redetermination of probable cause. The grand jury returned a new indictment under the same cause number, and, on March 9, 2016, Woodington was again arraigned.

**¶3**       On March 21, Woodington filed a notice of change of judge pursuant to Rule 10.2, Ariz. R. Crim. P., requesting the respondent judge's removal from the case. In the notice, Woodington stated that "the court's rotation of bench assignments would have normally resulted in reassignment to [Judge Richard Fields], which assignment would be acceptable to both parties." The respondent judge denied the request, noting that Woodington

previously had been indicted in the same cause number, "[t]he case ha[d] been assigned to [the respondent judge] since its inception," and "[t]he original case ha[d] never been dismissed." Citing *Godoy v. Hantman*, the respondent judge thus determined the notice was untimely. 205 Ariz. 104, 67 P.3d 700 (2003).

**¶4** Woodington filed a motion with the respondent presiding judge, Judge Kyle Bryson, arguing the notice was timely and asking that the presiding judge "determine the assignment of judge on th[e] case." The presiding judge denied the motion and this petition for special action followed.

## Jurisdiction

**¶5** A defendant may only challenge the denial of a motion for a peremptory change of judge pursuant to Rule 10.2 by special action. *State v. Ingram*, 239 Ariz. 228, ¶ 16, 368 P.3d 936, 940 (App. 2016). Therefore, because Woodington has no remedy by appeal, this matter is appropriate for special-action jurisdiction. *See* Ariz. R. P. Spec. Act. 1(a).

## Discussion

**¶6** Woodington contends the respondent judge exceeded his legal authority and failed to perform a duty required by law by failing to transfer his Rule 10.2 motion to the presiding judge. And he argues the respondent judge erred in denying his motion as untimely because it was filed within ten days of his second arraignment.

**¶7** "In interpreting a rule promulgated by the Arizona Supreme Court, we rely on principles of statutory construction to give effect to the supreme court's intent." *Reed v. Burke*, 219 Ariz. 447, ¶ 12, 199 P.3d 702, 705 (App. 2008). "If there is 'uncertainty about the meaning or interpretation of the [rule]'s terms,' we are required to employ 'methods of statutory interpretation that go beyond the [rule]'s literal language,' such as 'consideration of the [rule]'s context, language, subject matter, historical background, effects and consequences, and spirit and purpose.'" *Hornbeck v. Lusk*, 217 Ariz. 581, ¶ 6, 177 P.3d 323, 325 (App. 2008) (alterations in

*Hornbeck*), *quoting Estancia Dev. Assocs. v. City of Scottsdale*, 196 Ariz. 87, ¶ 11, 993 P.2d 1051, 1054 (App. 1999).

¶8        Woodington contends the language of Rule 10.2 is clear and suggests we need not employ other methods of statutory interpretation.  He argues "[a]rraignment" in Rule 10.2(c) means any arraignment, including one after a motion pursuant to Rule 12.9, Ariz. R. Crim. P., is granted.  The state, in contrast, asserts that "[a]rraignment" refers to the first arraignment in the case, the point at which a judge is assigned.  Because the rule's language is reasonably susceptible to both interpretations, we consider other methods of construction to determine our supreme court's intent. *See State v. Jurden*, 237 Ariz. 423, ¶ 11, 352 P.3d 455, 458-59 (App. 2015).

¶9        Rule 10.2(a) provides that "[i]n any criminal case, each side is entitled as a matter of right to a change of judge."  This right is exercised by the filing of a notice signed by counsel, avowing the request is made in good faith.  Ariz. R. Crim. P. 10.2(b).  The rule provides timeframes for filing the notice depending on the stage of the proceedings.  *See* Ariz. R. Crim. P. 10.2(c).  Rule 10.2(c)(1) requires the notice to be filed within ten days of the "[a]rraignment, if the case is assigned to a judge and the parties are given actual notice of such assignment at or prior to the arraignment."  The rule does not include a definite or indefinite article to modify the term "[a]rraignment," but it does make clear that it provides "a" peremptory challenge in "any" criminal case—the language employed to modify each noun is singular.  Ariz. R. Crim. P. 10.2(a), (c).  Therefore, a defendant is entitled to only one peremptory challenge in a criminal case.  *See Hill v. Hall*, 194 Ariz. 255, ¶ 10, 980 P.2d 967, 970 (App. 1999).

¶10        Thus, whether a party is entitled to file a peremptory challenge following a subsequent arraignment turns upon whether that arraignment has taken place in the same "criminal case" or is part of a new "criminal case."  Ariz. R. Crim. P. 10.2(a).  In *Godoy*, on which Woodington relies, our supreme court addressed the second circumstance—a second arraignment that was part of a new proceeding.  205 Ariz. 104, ¶ 1, 67 P.3d at 701.  Godoy moved for a new finding of probable cause pursuant to Rule 12.9, and, when the

state did not timely recommence a grand jury proceeding, the trial court dismissed the matter pursuant to Rule 12.28(c), Ariz. R. Crim. P.[1] *Id.* ¶ 3. After the case was dismissed, the state filed new charges and the grand jury issued an indictment arising from the same conduct "underlying the first indictment." *Id.* ¶ 4. The case was assigned to the same judge, and, two days later, the state filed a notice of change of judge under Rule 10.2. *Id.* Godoy filed a special action challenging the trial court's order transferring the matter to another judge. *Id.* ¶¶ 4-5.

¶11 On review, our supreme court noted the question whether the state's peremptory challenge was timely "depends upon whether the subsequent indictment simply 'continued' the earlier action or instituted a new action" and the "resolution of this issue depends upon the effect of the trial court's order dismissing the action without prejudice." *Id.* ¶ 6. In holding the state was entitled to a change of judge under Rule 10.2, the court explained that, once the initial proceeding was dismissed, "nothing remained of that action" and, "[w]hen the new case began, Rule 10.2 provided each party a peremptory right to change the judge within the time permitted by the rule." *Id.* ¶ 8. Notably, the court distinguished Godoy's case from *State v. Poland*, 144 Ariz. 388, 698 P.2d 183 (1985), on the basis that, "[i]n *Poland*, the judge did not dismiss the action." *Godoy*, 205 Ariz. 104, ¶ 9, 67 P.3d at 703.

¶12 Thus, unlike the situation in *Godoy*, Woodington was not entitled to a second peremptory challenge because his case was never dismissed. Indeed, the language of Rule 12.9 anticipates that on remand to the grand jury the case simply "continues" after the new finding of probable cause.

¶13 Rule 12.9(a) allows a defendant to challenge grand-jury proceedings on certain grounds, and, if such a motion is granted, Rule 12.9(c) provides that "the State may proceed with the prosecution of the case pursuant to Rule 2, Rules of Criminal

---

[1] Although Rule 12.28(c) applies to state grand juries, its language, with a few minor exceptions, essentially mirrors the language of Rule 12.9(c), which applies to county grand juries.

Procedure, or by resubmission to the same or another grand jury." The language of this rule is singular as well—the state is allowed to continue its "prosecution of *the* case." Ariz. R. Crim. P. 12.9(c) (emphasis added). And Rule 12.9(c) directs, "Unless a complaint is filed or a grand jury consideration is commenced within fifteen days after entry of the order granting the motion under this rule, the case shall be dismissed without prejudice." Thus, the case will continue unless the state fails to timely proceed. In view of Rule 12.9's language, we conclude our supreme court intended that a remand for a new determination of probable cause does not automatically trigger a new criminal case. Rather, the case simply continues unless the state fails to timely act, at which point the case "shall be dismissed without prejudice." Ariz. R. Crim. P. 12.9(c).

¶14　　　Our conclusion is bolstered by the speedy-trial provisions of Rule 8, Ariz. R. Crim. P., and the waiver provisions of Rule 10.4. Rule 8.4 sets forth the time periods to be excluded in calculating the deadline by which a case must be tried. Among the excluded periods are those for "[d]elays resulting from a remand for new probable cause determination under Rules 5.5 or 12.9." Ariz. R. Crim. P. 8.4(b). That the supreme court included a provision to exclude the time during which a remand takes place suggests it anticipated a continuing proceeding, not a new one.

¶15　　　Additionally, Rule 10.4(a) provides that parties waive their right to a peremptory challenge by "participat[ing] before that judge in any contested matter in the case, an omnibus hearing, any pretrial hearing, a proceeding under Rule 17, or the commencement of trial." The respondent judge's ruling on Woodington's Rule 12.9 motion, after a hearing, constituted a court determination after a contested proceeding. And Rule 10.4(b) specifies the lone ground for "[r]enewal" of the right to a peremptory challenge—"[w]hen an action is remanded by an Appellate Court for a new trial on more offenses charged in the indictment." The supreme court did not include the grant of a Rule 12.9 motion as the basis for a renewal of the right.

¶16　　　Having concluded that a remand pursuant to Rule 12.9 does not trigger a new criminal proceeding absent a dismissal, we necessarily conclude that "[a]rraignment" as used in Rule 10.2(c)

refers only to the first arraignment in a case. The rule and our case law are clear that each party is only entitled to one peremptory challenge to a judge in a case, and, as described above, we conclude that a criminal case simply continues following remand for a redetermination of probable cause unless it is dismissed.[2] Thus, a second arraignment in the same case does not trigger a new peremptory challenge.

¶17        Our supreme court has directed that "any provision relating to disqualification of judges must be given strict construction to safeguard the judiciary from frivolous attacks upon its dignity and integrity and to ensure the orderly function of the judicial system." *State v. Perkins*, 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984), *overruled on other grounds by State v. Noble*, 152 Ariz. 284, 731 P.2d 1228 (1987). "A construction which would expand the availability of peremptory changes of judge would be inconsistent with the[] principles" of interpretation set forth by that court. *Fiveash v. Superior Court*, 156 Ariz. 422, 425, 752 P.2d 511, 514 (App. 1988). Allowing a party to participate in a contested matter without waiving the peremptory challenge or to otherwise gain a second opportunity for such a challenge in the same proceeding clearly would expand the availability of peremptory challenges and presents the possibility of "frivolous attacks" upon the judiciary.

---

[2]Woodington cites *Bowman v. State*, 103 Ariz. 482, 483, 445 P.2d 841, 842 (1968), for the proposition that "there is no case pending in the Superior Court until a new information is filed." But, in that case, the information was quashed and no new information was filed within the thirty days allowed by the applicable criminal rule. *Id.* The trial court denied the defendant's motion to dismiss, but our supreme court ruled the state was required to file a new information to proceed. *Id.* Although the matter had not expressly been dismissed, the applicable rule required dismissal after thirty days, suggesting the court viewed the matter as effectively dismissed when the state failed to timely proceed. *See id.* We therefore conclude, to the extent it is applicable to the current criminal procedure rules on the point presented here, *Bowman* is consistent with our holding.

*Perkins*, 141 Ariz. at 286, 686 P.2d at 1256. We therefore disagree with Woodington's interpretation of Rule 10.2 and conclude a party is not entitled to a second peremptory strike after a second arraignment when the case has not been dismissed.[3]

**¶18** Woodington also contends the respondent presiding judge failed to perform a required duty when he denied Woodington's motion to determine reassignment of this matter. For the reasons explained above, we reject his claim that the respondent presiding judge erred insofar as he accepted the respondent judge's ruling that Woodington was not entitled to an additional peremptory challenge.

**¶19** Woodington's argument as to the respondent presiding judge also focuses, however, on a superior court administrative order relating to bench assignments. That order provides in relevant part that "[c]riminal cases assigned to [the respondent judge] will be reassigned to Judge Fields" on February 1, 2016. Thus, Woodington maintains, the respondent judge should not have been allowed to continue on his case and "[t]he published reassignment of criminal cases . . . was not followed." We disagree.

**¶20** First, the administrative order is a notice provision that reflects the superior court's operations. Second, assuming for the sake of argument that Woodington had a right to rely on the administrative order, he waived it. The administrative order was effective on February 1, 2016. The hearing on the state's motion to amend the indictment and Woodington's motion to remand the matter to the grand jury also was held on February 1. Indeed, the

---

[3] Woodington suggests that unfairness could result, for example, from the state's amending or adding charges upon remand to the grand jury in which case he theorizes the state would be entitled to another peremptory challenge. But our decision applies equally to both parties. Any amendment or additional charges in the same case will not entitle the state to successive peremptory challenges under Rule 10.2. *See Godoy*, 205 Ariz. 104, ¶ 6, 67 P.3d at 702 ("Rule 10.2 entitles either party in a criminal case to *a* change of judge as a matter of right.") (emphasis added).

respondent judge granted Woodington's motion on that date and ordered the matter remanded to the grand jury. Nothing in the minute entry for that hearing indicates that Woodington objected to the respondent judge's continuing to preside over the matter. Any claim of error relating to the lack of enforcement of that order is therefore waived. Finally, Rule 24, Pima Cty. Super. Ct. Loc. R. P., permits the trial court to suspend a local rule for "good cause shown." The local rules govern assignment of cases and handling by the court administrator.[4] The respondent judge explained in detail the reasons for his departure from the administrative order and by so doing provided good cause to suspend the assignment of the case that otherwise would have occurred under the administrative order.[5]

## Disposition

¶21 For the reasons stated above, we accept jurisdiction but deny relief.

---

[4]Rule 91(c), Ariz. R. Sup. Ct., requires superior courts to adopt rules for "assignment of cases to the different judges." Rule 6.3, Pima Cty. Super. Ct. Loc. R. P., specifically addresses civil actions, but the record before us suggests the superior court relies on it for the procedure in criminal cases as well. Rule 6, Pima Cty. Super. Ct. Loc. R. P., also discusses the responsibilities of the Pima County superior court administrator, which include advising attorneys of the status of calendars, as it did by the February 1 administrative order. *See* Ariz. R. Sup. Ct. 93(a)(2), (3).

[5]We recognize there are scenarios in which a party could file a challenge under Rule 10.2(c)(3) based upon reassignment pursuant to an administrative order. But in those circumstances it is Rule 10.2(c)(3) that gives the authority to file the challenge, not the administrative order. In the present case, Woodington has not demonstrated that the administrative order in question, or the respondent judge's implicit decision to suspend it, constituted formal notice of reassignment sufficient to trigger Rule 10.2(c)(3).